# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARGENTUM MEDICAL, LLC, | |
|    Plaintiff, | NO. 3:08-CV-1305 |
| v. | (JUDGE CAPUTO) |
| NOBLE BIOMATERIALS, and DERMA SCIENCES, INC., | |
|    Defendants. | |
| NOBLE BIOMATERIALS, | |
|    Counter-Claim Plaintiff, | |
| v. | |
| ARGENTUM MEDICAL, LLC, THOMAS MILLER and GREGG SILVER, | |
|    Counter-Claim Defendants. | |

## MEMORANDUM

Presently before the Court are the Summary Judgment Motions of Defendants Noble Biomaterials ("Noble") and Derma Sciences, Inc. ("Derma") (Doc. 153) ('the joint motion"), Derma (Doc. 157), and Plaintiff Argentum Medical, LLC ("Argentum") (Doc. 154).[1] For the reasons detailed below, the Court will deny the joint motion and dismiss the claims covered in that motion for lack of jurisdiction. The Court will grant Derma's motion for summary judgment and deny Plaintiff' motion for summary judgment. The Court has jurisdiction in this

---

[1] As the joint motion filed by Noble and Derma and Derma's individual motion overlap in terms of subject matter, the Court will treat the joint motion as seeking summary judgment on Count 1 of the Second Amended Complaint, which is asserted against both Defendants for patent infringement, and Noble's counterclaim seeking declaratory judgment of patent invalidity. The Court will treat Derma's individual motion as seeking summary judgment for the remaining claims in the Complaint because the allegations in those causes of action are asserted solely against Derma.

matter pursuant to 28 U.S.C. §§ 1331 and 1338.

## BACKGROUND

**1. FACTS**

This case relates to United States Patent Number 7,230,153 ("the '153 patent"), which discloses a Multi-Layer Conductive Appliance Having Wound Healing and Analgesic Properties. The claims at issue in this care are claims 1, 3, 13, 14, 16, and 17; of these, only claims 1 and 14 are independent claims. (Doc. 156 at ¶¶ 15-16.) Claim 1 is for "[a] wound dressing for treating a pathology in a portion of a living organism, comprising, at least one layer of conformable, conductive fabric having a surface resistance of 10 Ohms/in$^2$ to 0.001 Ohms/in$^2$ wherein the at least one layer of conformable conductive fabric comprises a biologically inert polymer uniformly coated with a metal or metal alloy." Claim 14 teaches "[a] medical device comprising: conformable, conductive fabric comprising a biologically inert polymer, uniformly coated with an antimicrobial metal, wherein said conformable, conductive fabric has a surface resistance of 10 Ohms/in$^2$ to 0.001 Ohms/in$^{2.}$" The '153 patent is a continuation-in-part of patent number 6,087,549 (the '549 patent), which was filed on September 22, 1997.

Plaintiff maintains that it was properly assigned rights to the '153 patent, and, therefore, is the proper party to bring this suit. Defendants contend that the '153 was never properly assigned to Plaintiff, preventing Plaintiff from bringing the instant suit. The '153 patent names A. Bart Flick as its inventor and Argentum International, LLC ("International") as the assignee. International and Argentum then entered into a license agreement, effective on March 28, 2001, that granted Argentum exclusive rights in the '549 patent applications and all continuations, continuations-in-part, and divisionals filed on that application. (Doc

177, Ex. T.) Flick testified in his deposition that the date of this license agreement did not reflect the actual date that the agreement was signed, and that it was not signed until some time in 2003. (Flick Dep. 96:4-8, July 14, 2009.) According to Flick, the license agreement was backdated "as a mechanism to hide assets from the Plaintiffs" in a case against International. (Flick Dep. 98:25-99:2.)

There is also an Assignment of Patent, wherein International assigned the '549 patent to Argentum Research, Inc. ("Research"); this assignment was signed on February 25, 2001, over a month prior to the effective date of the transfer between International and Argentum. (Doc. 177, Ex. T.) This assignment transferred to Research "the entire right, title, and interest in and to the ['549 patent], and in and to all inventions and improvements disclosed and described in [the '549 patent], and to any reissue and other applications therefor." (Doc. 177, Ex. T.) However, on February 15, 2005, Research and International entered into a *nunc pro tunc* assignment supposedly effective as of February 25, 2001; this transfer assigned the rights in the '549 patent and any continuations or continuations-in-part from Research back to International.

The wound dressing disclosed in the '153 patent and its parent applications was sold by Plaintiff under the trade name SILVERLON® . (Doc. 156 at ¶ 1.) Defendant Noble makes and sells silver-coated nylon wound dressings under the trade name SILVERSEAL ®. (Doc. 156 at ¶ 3.) Defendant Derma is a distributor of medical products and currently distributes Noble's SILVERSEAL® products. (Doc, 156 at ¶ 4.) Derma acted as the distributor for Argentum for its SILVERLON® products from 2002 to April 2005. (Doc. 174 at ¶¶ 1-2.) In April or May 2005, Derma began distributing SILVERSEAL® for Noble. (Doc. 174 at ¶ 2.)

Argentum alleges that Derma made false or misleading statements by telling

consumers of silver-coated wound dressings that SILVERLON® had been discontinued and/or was no longer available for purchase. (Doc. 89 at ¶ 14-15, 20.) Plaintiff further alleges that Derma's sale representatives contacted one Argentum's customer, Cardinal Health, and told representatives of Cardinal Health that SILVERLON® products were no longer available for purchase and/or had been bee discontinued. (Doc. 89 at ¶ 25.)

Derma has proffered several affidavits from various individuals claiming that Derma never told them that SILVERLON® had been discontinued. (Doc. 157, Exs. A-D.) Among these were James Bollmann, an employee of Home Healthcare Solutions, and Vance Redix, an employee of Cardinal Health. (Doc. 157, Exs. B-C.) In response, Argentum has submitted the affidavit of Gary P. Blaeser, current Vice President of National Accounts for Argentum and former Regional Sales Manager for Derma, stating that he "specifically recall[s] a conversation with Mr. Bollmann in January 2008 in which he told me that he had been informed by Derma Sciences that the SILVERLON products were no longer available." (Doc. 172 at ¶¶ 1-2, 13.)

In preparation for a trade show in April 2005, several internal e-mails were sent between employees of Derma discussing how the company should address its transition from Argentum to Noble when confronted by potential customers at the trade show. In those e-mails, Gary Kostner, Derma's Vice President for Corporate Accounts, advised: "[r]egarding Silverlon and now our new relationship with Nobel (sic) Fiber - the less said the better - don't bring it up! We should just show the (Silverlon) products and discuss the origin as little as possible." (Doc. 172, Ex. A.) A later e-mail from Barry Wolfenson, Derma's Vice President of Marketing, clarified that Derma employees were to affirmatively state that Derma was distributing Noble's product and that they were no longer representing SILVERON® in any

4

way; Wolfenson's position was senior to that of Kostner. (Doc. 172, Ex A; Doc. 178, Ex. A.) The final e-mail in the chain is from Wolfenson and it sets out the "key talking points" for the trade show regarding the manufacturer switch, including the fact that Derma had switched to distributing for Noble. (Doc. 172, Ex. A.)

## 2. PROCEDURAL HISTORY

The current case was initiated by Plaintiff Argentum against Defendants in the Northern District of Illinois on December 3, 2007. On April 21, 2008, Argentum filed an Amended Complaint bringing four (4) counts against the Defendants. (Am. Compl., Doc. 45.) Count I of the Amended Complaint alleged a patent infringement claims against Defendants Noble and Derma. Count II alleged a false designation of origin claim against Derma. Counts III and IV alleged state law claims for deceptive trade practices and tortious interference with a prospective economic advantage by Derma.

On May 12, 2008 Noble moved to dismiss Count I of Argentum's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) or, in the alternative, transfer the case to the Middle District of Pennsylvania. (Doc. 46.) On May 16, 2008, Derma filed a Third Party Complaint against Noble, (Doc. 56), along with a separate motion to transfer this case to the Middle District of Pennsylvania or, in the alternative, stay the proceedings with respect to Derma pending resolution of Argentum's patent infringement claim against Noble (Doc. 57). On June 23, 2008, the Hon. George W. Lindberg found that Argentum had "failed to establish a prima facie case of personal jurisdiction" over Noble. (Doc. 73, at 4.) Judge Lindberg, accordingly dismissed Count I as to Noble for lack of personal jurisdiction. (*Id.*) Judge Lindberg also found that "the factors argued by the parties establish that party and witness convenience would be better served . . ." and that "the

interest of justice [would be] served by transferring this case to the Middle District of Pennsylvania." (Id., at 5-6.) The case was, accordingly, transferred to this Court on July 8, 2008. (Doc. 75.)

After obtaining the Court's leave to amend and add a party, Argentum filed its Second Amended Complaint on September 4, 2008, re-adding Noble to this case, and re-asserting the same causes of action alleged in the original Complaint. (Doc 89.) On November 10, 2008, Derma filed its Answer and brought a counterclaim seeking a declaratory judgment that the '153 patent is invalid. (Doc. 101.) On November 12, 2008, Noble filed its Answer to Argentum's Second Amended Complaint, also providing affirmative defenses and stating several counterclaims against Argentum and two of its managers, Thomas Miller and Gregg Silver, including a counterclaim seeking a declaration of the '153 patent's invalidity (Count I),. (Doc. 102.) On December 1, 2008, Argentum filed its Answer to Derma's Counterclaim. (Doc. 105.) On December 4, 2008, Argentum filed its Answer to Noble's Counterclaims. (Doc. 107.) Silver and Miller filed their respective Answers on June 18, 2009. (Docs. 143-144.)

On October 27, 2009, Derma and Noble filed a Motion for Summary Judgment on all claims asserted against them in the Second Amended Complaint, and on Count I of Noble's counterclaims, seeking Declaratory Judgment of the Invalidity of the '153 patent. (Doc. 153.) Argentum also filed a Motion for Summary Judgment on its claim for patent infringement (Count I), on October 27, 2009. (Doc. 154.) Derma also filed a separate Motion for Summary Judgment on Counts II, III, and IV of the Second Amended Complaint. (Doc. 157.) These motions have all been fully briefed and are currently ripe for disposition.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving

party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

**1.   ARGENTUM'S COMPLAINT**

**A.   Count I: Patent Infringement**

A plaintiff seeking money damages in a patent infringement suit must hold legal title to the patent at the time of infringement to have standing. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995). The question of standing is jurisdictional. *Id.* (citation omitted). In this case, Argentum Medical does not have title to the patent as patentee or exclusive licensee, nor did Argentum Medical ever have such title. *See* 35 U.S.C. § 100(d) (defining term "patentee"); *see also Rite-Hite*, 56 F.3d at 1552 (holding exclusive licensee has standing to bring suit).

Flick, the inventor of the patent, transferred his rights in the patent to International. On February 25, 2001, International assigned its rights in the '549 patent and any continuations-in-part, including the '153 patent, to Research. Then, on March 28, 2001, International attempted to assign its rights in the '549 patent and any continuations-in-part, including the '153 patent, to Argentum Medical. However, at that time, International had already relinquished its rights in the intellectual property to Research and, therefore, had nothing to

8

validly convey to Medical.[2] In an attempt to remedy this situation, Research and International entered into a *nunc pro tunc* assignment on February 15, 2005, that would date back to February 25, 2001, and transfer the intellectual property rights from Research back to International.

*Nunc pro tunc* is defined as "[h]aving legal effect through *a court's inherent power*." *Black's Law Dictionary* 1174 (9th Ed. 2009) (emphasis added). Parties to a contract, however, do not have the power to enter into *nunc pro tunc* agreements that operate to reach back in time and affect the rights of parties. Allowing this would undermine fundamental principles of contract law and conveyance of property. One could simply avoid an unfavorable contract by entering into a later contract *nunc pro tunc* with a third party that dated back to some time before the unfavorable contract was entered into, thereby stripping the original contract of its legal force. Moreover, applying this doctrine to the transfer of property would leave transactions unsettled and lacking in finality. Such a result is unworkable.

This Court see no reason why such an agreement would be valid, and Plaintiff has not pointed to any case that has allowed *nunc pro tunc* conveyances, assignments, or transfers of real or intellectual property. Therefore, at the time International entered into its license agreement with Argentum Medical, it had already conveyed its interest in the '153 patent to Research. Argentum Medical, therefore, was never assigned any rights in the '153 patent by International because International had no rights to convey on March 28, 2001. As

---

[2] Furthermore, there is some question whether this assignment would have been valid in any event because Argentum Medical, LLC was not formed until almost one year after the effective date of this transfer, March 28, 2001. (Doc. 169, Ex. 8.) Thus, it appears that the transfer was to an entity that did not exist.

9

such, Plaintiff Argentum Medical did not have title to the '153 patent at the time of the alleged infringement and lacks standing to bring this suit. Thus, there is a jurisdictional defect in this claim and the Court cannot enter summary judgment. Instead, the claim will be dismissed for lack of standing.

### B. Count II: False Designation of Origin

Count II of the Second Amended Complaint is brought pursuant to Section 43(a) of the Lanham Act. This section provides that it is unlawful for:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A).

To establish a violation of Section 43(a) of the Lanham Act, Argentum must prove: (1) ownership of the trademark, (2) the mark is valid and legally protectable; and (3) Derma's use of the mark to identify goods or services was likely to create confusion. *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 279 (3d Cir. 2001). "To prove likelihood of confusion, plaintiffs must show that 'consumers viewing the mark would probably assume the product or service it represents is associated with the source of a different product or service identified by a similar mark.'" *Id.* at 280 (citing *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1229 (3d Cir. 1978)).

Assuming, without deciding, that Argentum can satisfy the first two prongs of the test, Argentum still cannot meet the third prong. Argentum has not presented evidence that would

10

create a genuine issue of material fact that would allow a reasonable juror to conclude that Derma used the SILVERLON® trademark to identify goods and services in a manner that was likely to cause confusion. Although the e-mail from Kostner would suggest that Derma was considering using SILVERLON® at a trade show after it had agreed to distribute for Noble, the e-mails from Wolfenson sent in response show a corporate mandate from senior executives to be forthright about the manufacturer switch and the fact that Derma would be distributing Noble products.

To the extent that Plaintiff relies on Derma's alleged statements that SILVERON® was no longer available or was on back order, this does not constitute using a mark in a way that is likely to confuse consumers as to the origin of the products in question. It might confuse consumers as to the availability of SILVERLON®, but that is not the type of confusion that Section 43(a) of the Lanham Act was designed to protect against. As such, Argentum has not created a genuine issue of material fact regarding Derma's use of the SILVERLON® mark in a manner likely to cause confusion, and summary judgment will be granted in favor of Derma on the False Designation of Origin claim.

### C. Count III: Deceptive Trade Practices

"Where a plaintiff's factual allegations under the Illinois Uniform Deceptive Trade Practices Act also form the basis for plaintiff's claim under the Lanham Act, the legal inquiry is the same under both statutes. Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act." *SB Designs v. Reebok International, Ltd.*, 338 F. Supp.2d 904, 914 (N.D. Ill. 2004) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983)). As this Court has already found that summary judgment should be granted in favor

of Derma on the Lanham Act claims, it will also grant summary judgment on the Illinois Deceptive Trade Practices claim.

### D. Count IV: Tortious Interference with Prospective Economic Advantage

Count IV of the Second Amended Complaint is directed at Derma's interference with Argentum's relationship with Cardinal Health. The only evidence on the record regarding Cardinal Health is the affidavit of Vance Redix, who stated that Derma never made any statements to him regarding the unavailability of SILVERLON® products. Plaintiff has not offered any evidence to contradict this statement, and, therefore has not created a genuine issue of material fact that would allow a reasonable fact finder to find that Derma interfered with Argentum's prospective economic advantage with Cardinal Health. Summary judgment will be granted in favor of Derma on this count.

### 2. Noble's Counterclaim: Invalidity of the '153 Patent

An actual controversy must be present before a declaratory judgment action is ripe for adjudication. *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992); 28 U.S.C. § 2201. As such, declaratory justiciability of patent disputes requires:

> both (1) an explicit threat or other action *by the patentee*, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

*BP Chems. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993) (emphasis added). As noted above, Argentum Medical is not the patentee, as defined in patent law, for the '153 patent. Therefore, the first prong of the test is not satisfied, and Defendant Noble's cause of action for declaratory judgment is not ripe for adjudication. Because this cause of action

is not ripe, it would be inappropriate to enter summary judgment, and, instead, this claim will be dismissed.

## **CONCLUSION**

For the reasons stated above, the Court will grant Derma's Motion for Summary Judgment on Counts II, III, and IV (Doc. 157), deny Derma and Noble's Motion for Summary Judgment on Count I and Noble's Counterclaim for Declaratory Judgment (Doc. 153) and, instead dismiss these claims for lack of justiciability, and deny Plaintiff Argentum Medical's Motion for Summary Judgment on Count I (Doc. 154.)

An appropriate Order follows.


July 1, 2010 /s/ A. Richard Caputo
Date                                                                             A. Richard Caputo
                                                                                       United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ARGENTUM MEDICAL, LLC, | |
| Plaintiff, | NO. 3:08-CV-1305 |
| v. | |
| NOBLE BIOMATERIALS, and DERMA SCIENCES, INC., | (JUDGE CAPUTO) |
| Defendants. | |
| NOBLE BIOMATERIALS, | |
| Counter-Claim Plaintiff, | |
| v. | |
| ARGENTUM MEDICAL, LLC, THOMAS MILLER and GREGG SILVER, | |
| Counter-Claim Defendants. | |

## ORDER

**NOW**, this  1st  day of July, 2010, **IT IS HEREBY ORDERED:**

1) The Motion for Summary Judgment of Defendants Derma and Noble (Doc. 153) is **DENIED.** Count I of the Second Amended Complaint (Doc. 89) is **DISMISSED** for lack of standing. Counterclaim I brought by Noble in its Answer (Doc. 102) for a declaration of patent invalidity is **DISMISSED** for lack of ripeness.

2) The Motion for Summary Judgment of Plaintiff Argentum Medical (Doc. 154) is **DENIED**.

3) The Motion for Summary Judgment of Defendant Derma (Doc. 157) is **GRANTED**. **JUDGMENT IS ENTERED** in favor of Defendant Derma on Counts II, III, and IV of the Second Amended Complaint (Doc. 89).

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge