## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOBLE BIOMATERIALS, | : | |
| | : | |
| Counterclaim Plaintiff, | : | No. 3:08-cv-01305 |
| | : | |
| v. | : | |
| | : | HONORABLE A. RICHARD |
| | : | CAPUTO |
| ARGENTUM MEDICAL, LLC, | : | |
| THOMAS MILLER AND | : | |
| GREGG SILVER | : | |
| | : | |
| Counterclaim Defendants. | : | |

## COUNTERCLAIM PLAINTIFF'S TRIAL BRIEF

Pursuant to Local Rule 39.7, Counterclaim Plaintiff, Noble Biomaterials ("Noble"), hereby files its Trial Brief.

## I.   SUCCINCT STATEMENT OF THE EVIDENCE TO BE PRESENTED

In accordance with the Court's direction at the pre-trial conference, Noble will not duplicate the extensive recitation of the facts that was set forth in its Pretrial Memorandum and the Statement of Undisputed Facts attached thereto as Exhibit A.

## II.   ANTICIPATED LEGAL ISSUES

Noble would like to bring to the Court's attention five particular legal issues that will or may arise at trial. First, Noble anticipates that Argentum will erroneously argue that Noble's claim for false advertising under the Lanham Act necessarily fails because Argentum did not falsely advertise to a sufficient number of Noble's customers and prospective customers. Second, under the principles of

collateral estoppel Argentum is bound to the judgment of the Georgia state court case holding that the 1997 back-dated license from Argentum International to Argentum Medical was assigned as part of a fraudulent scheme.  Third, Noble's evidence that during settlement discussions Argentum demanded that Noble pay a royalty on the sale of its metalized fibers is not inadmissible under Federal Rule of Evidence 408 because it is not being introduced to establish liability, but rather for a permitted purpose of establishing that Argentum has engaged in a pattern of wrongful conduct by seeking to extend its '153 Patent to unpatented materials.  Fourth, Noble's evidence that certain customers expressed that they no longer wanted to purchase SILVERSEAL because of Argentum's patent infringement claims should be admitted under the "state of mind" exception in *Federal Rule of Evidence 803(3)* because it will be offered for the limited purpose of proving customer motive.  Fifth, Noble's evidence of tradeshow attendees out-of-court statements about Argentum's claims that Noble was infringing on their patents is not hearsay because it is not offered for the truth of the matter asserted.

**A.    Argentum's False Statements To Noble's Customers At Various Industry Trade Shows And Through Letters and Phone Calls That Noble Infringed Its '153 Patent Can Constitute "Commercial Advertising" Under The Lanham Act**

Noble anticipates that Argentum will attempt to avoid liability under the Lanham Act by arguing that Argentum's disparaging comments that Noble infringed the '153 Patent do not qualify as "commercial advertising or promotion" because these false statements were not part of a mass advertising campaign but rather were only directed to customers and prospective customers at nine trade

shows over an approximate three-year period.  Such an argument would impose a level of dissemination not required by the governing case law.

Oral statements by sales representatives can constitute commercial advertising or promotion. *Sanofi-Aventis U.S. LLC v. Novo Nordisk, Inc.*, No. 06-1369, 2006 U.S. Dist. LEXIS 69150, at *44 (D.N.J. June 23, 2006) (citations omitted); *see also Enesco Group v. Jim Shore Designs*, No. 05-4371, 2005 U.S. Dist. LEXIS 31718, at *4 (N.D. Ill. Dec. 6, 2005) (concluding that statements made to customers at trade shows "would logically constitute 'commercial advertising' under the Lanham Act").  Such oral statements need only be "sufficiently disseminated to the relevant purchasing public to constitute 'commercial advertising or promotion'" within the industry. *Sanofi-Aventis*, 2006 U.S. Dist. LEXIS 69150, at *44; *see also Caldon, Inc. v. Advanced Measurement & Analysis Group, Inc.*, 515 F. Supp. 2d 565, 578 (W.D. Pa. 2007); *Neyvas v. Morgan*, 309 F. Supp. 2d 673, 680 (E.D. Pa. 2004).  What qualifies as "sufficient dissemination" will vary "from industry to industry and from case to case," depending on the number of potential purchasers in the market. *Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc.*, No. 00-3683, 2001 U.S. Dist. LEXIS 10709, at *34-35 (E.D. Pa. 2001).

At trial, Noble will present evidence that at nine trade shows between October 2004 and April 2007, Tom Miller, Gary Blaeser, and others repeatedly advised Noble's customers and prospective customers that Noble's SILVERSEAL products infringed Argentum's '153 Patent.  These trade shows are specialized events that virtually all of Noble's customers and targeted customers attend.  By spreading these false statements at these populated trade shows, Argentum

successfully informed the majority of Noble's customers and potential customers that Noble's products violated the patent laws.  However, Argentum did not stop there.

Additionally, Noble will present evidence that Argentum CEO, Gregg Silver, directly contacted Noble customers and potential customers through a concerted campaign of telephone calls and letters.  These telephone calls and letters advised Noble's customers and prospective customers that Noble's SILVERSEAL products infringed Argentum's '153 Patent.  Any argument by Argentum that its disparaging statements are not actionable under the Lanham Act only because Argentum did not lie to enough customers is thus without merit.

## B.   Argentum Is Bound Under Collateral Estoppel To The Georgia State Court Judgment

Noble will ask the Court to find that Argentum is bound under principles of collateral estoppel to the judgment of the Georgia state court case, holding that the 1997 back-dated license from Argentum International to Argentum Medical was assigned as part of a fraudulent scheme.  The events leading up to the Georgia judgment are set forth at length in the Pretrial Memorandum and per the Court's instructions will not be repeated here.

The preclusive effect of a judgment is decided under the law of the state in which it was issued.  *Walzer v. Muriel, Siebert & Co., Inc.*, 221 Fed. Appx. 153, 155 (3d Cir. 2007).  Under Georgia law, a party may not collaterally attack the resolution of any "issue of fact or law [that] is actually litigated and determined by a valid judgment [where] the determination is essential to the judgment.  *Kent v. Kent*, 265 Ga. 211, 211 (1995).  The Georgia Court of Appeals' decision

establishes that the jury necessarily found that Flick and Miller engaged in a scheme to misappropriate Argentum International's rights under the '549 Patent. *Argentum Int'l, Inc. v. Woods*, 634 S.E.2d 195, 200-11 (Ga. Ct. App. 2006). For instance, it found that:

> There is at least some evidence from which the jury could conclude that, as early as the latter part of 1998, Miller had joined Flick in a conspiracy to take the Patent from Argentum International while misleading the Plaintiffs into thinking that the basis for their investments was safe. . . . Meanwhile, Flick and Miller began taking steps to undermine the financial viability of Argentum International and to move the Plaintiffs' investments to a company that did not own the Patent. After the board resigned, Flick was able to transfer the Patent to Argentum Research, a venture Miller had helped to finance. Argentum International and Argentum Research helped to complete the plan through the actual transfer of the Patent.

*Id.* at 201.

The Georgia state court judgment is binding upon Argentum because Miller is a member and officer of the company. *QOS Networks Ltd. v. Warburg, Pincus & Co.*, 294 Ga. App. 528, 534 (Ga. App. 2008) (stating that for purposes of collateral estoppel, "parties need not be identical, [but] they must be so connected with a party to the previous judgment that the party fully represents the interest of the privy"). Miller and Flick also acted, at least in part, to benefit Argentum Medical as is conclusively evidenced by the transfer of Argentum International's assets to Argentum Medical. Moreover, Argentum Medical was added as a defendant in the Georgia litigation and was judicially determined to have participated in the scheme to strip Argentum International of its assets.

**C.    Noble May Introduce Portions Of Its Settlement Discussions with Argentum Because It Is Not Doing So To Establish Argentum's Liability**

Noble intends to introduce evidence that during settlement negotiations Argentum demanded that Noble pay a royalty in connection with its sale of metalized *fibers* pursuant to Argentum's '153 Patent that claims on metalized *fabrics*. This evidence is admissible to demonstrate Argentum's pattern of wrongful conduct in attempting to apply the '153 Patent beyond the scope of what is claimed by that patent.

Argentum predictably will seek to exclude this evidence on the grounds that settlement discussions are inadmissible evidence. Such an argument would overlook the clear text of the applicable federal rule of evidence. Rule 408 prohibits the introduction of settlement discussions "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount." Fed. R. Evid. 408(a). The rule expressly states that settlement discussions are not required to be excluded "if the evidence is not offered for purposes not prohibited by subdivision (a)." *Id.*; *see also Smith v. Borough of Dunmore*, No. 05-cv-1343, 2008 U.S. Dist. LEXIS 80450, at *33 (M.D. Pa. Oct. 9, 2008) (refusing to exclude evidence under Rule 408 that is not used to show liability or validity of a claim or amount).

Noble does not intend to introduce the settlement discussions to show that Argentum is liable on any claim. Rather, it anticipates using it for a permitted purpose, to establish Argentum's pattern of wrongful conduct in seeking to improperly apply the '153 Patent. The '153 Patent only claims on metalized wound fabrics. By demanding that Noble pay a royalty on its sale of metalized wound fibers – raw materials sold to be used in other types of wound dressings –

Argentum is seeking to improperly extend its patent monopoly to unpatented material. *See Ethyl Gasoline Corp. v. United States*, 309 U.S. 436, 459 (1940) ("The patent monopoly of one invention may no more be enlarged for the exploitation of a monopoly of another than for the exploitation of an unpatented article, or for the exploitation or promotion of a business not embraced within the patent."). Therefore, this evidence is highly probative of Argentum's pattern of wrongful conduct in seeking to apply the '153 Patent beyond what it claims upon.

Accordingly, Noble should be permitted to introduce the settlement discussions for this limited purpose.

### D. Noble Witnesses May Testify To Statements Made by Customers As To Why They No Longer Want To Purchase SILVERSEAL Products

Noble intends to introduce evidence that certain customers contacted them to express that they no longer wanted to purchase SILVERSEAL because of Argentum's patent allegations. This evidence will be offered for the limited purpose of proving customer motive and should be admitted under the "state of mind" exception in *Federal Rule of Evidence 803(3)*.

Argentum likely will seek to exclude this evidence on the grounds that this is a hearsay statement. Such an argument would disregard that these statements are not offered to show the fact that Noble lost business, but rather, the motives of certain Noble customers. *See Callahan v. A.E.V., Inc.*, 182 F.3d 237, 252 (3d Cir. 1999) (quoting *J.F. Fesser, Inc. v. Serv-A-portion, Inc.*, 909 F.2d 1524, 1535 n.11 (3d Cir. 1990) (quoting *Herman Schwabe, Inc. v. United Shoe Mach. Corp.*, 297 F.2d 906, 914 (2d Cir. 1962) ("'statements of a customer as to his reasons for not

dealing with a supplier are admissible for this limited purpose,' i.e., the purpose of proving customer motive, but not as evidence of the facts recited as furnishing the motives"). Therefore, this evidence is highly probative of the state of mind and motivations of Noble SILVERSEAL customers. Accordingly, Noble should be permitted to introduce the customer statements for this limited purpose.

> **E.   Noble May Introduce Tradeshow Attendees Out-Of-Court Statements About Argentum's Claims That Noble Was Infringing On Their Patents Because They Are Not Offered For The Truth Of The Matter Asserted.**

Argentum will likely claim that testimony from Noble representatives concerning what trade show attendees said about Argentum stating that Noble was infringing on their patent is hearsay and should not be admitted. At a series of industry tradeshows, numerous attendees approached Noble representatives indicating that Argentum representatives had stated that Noble products infringed on Argentum patents. Clearly, Noble does not offer these statements from Argentum as evidence that Noble was infringing on Argentum's patent. Rather, these statements are offered to establish that Argentum representatives communicated a "fact" that, unknowingly to the tradeshow attendees, was false.

It is the sheer falsity of the matter asserted by Argentum that makes it admissible. Statements offered "to establish a foundation for later showing, through other evidence, that [such statements] were false" are not hearsay. *Anderson v. United States*, 417 U.S. 211, 220 (1974); *see also Hussy v. Chase Manhattan Bank*, No. 02-cv-7099, 2005 U.S. Dist. LEXIS 15012, at * 20 (E.D. Pa.

July 27, 2005).   Accordingly, these statements are not hearsay because they are not being offered for the truth of the matter asserted.

Respectfully submitted

COZEN O'CONNOR

Dated:  January 31, 2011                    By:    /s/ Robert W. Hayes
                                                   Robert W. Hayes (33099)
                                                   1900 Market Street
                                                   Philadelphia, PA 19103
                                                   (215) 665-2094
                                                   Rhayes@cozen.com
                                                   *Attorneys for Plaintiff,*
                                                   *Noble Biomaterials*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this date, I caused the foregoing COUNTERCLAIM PLAINTIFF'S TRIAL BRIEF to be served upon all counsel of record via the Court's ECF filing system.


<u>/s/ Robert W. Hayes</u>

Dated:  January 31, 2011

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NOBLE BIOMATERIALS,                         :
                                            :
    Counterclaim Plaintiff,              :    No. 3:08-cv-01305
                                            :
    v.                                   :
                                            :    HONORABLE A. RICHARD
                                            :    CAPUTO
ARGENTUM MEDICAL, LLC,                      :
THOMAS MILLER AND                           :
GREGG SILVER                                :
                                            :
    Counterclaim Defendants.             :

---

## PRETRIAL MEMORANDUM OF
## COUNTERCLAIM PLAINTIFF NOBLE BIOMATERIALS

Date conference was held by counsel: December 22, 2010 (telephonic conference)

A.    <u>Federal Court Jurisdiction:</u>

Federal court jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 2201 and 2202.  Argentum Medical LLC ("Argentum Medical") commenced this action asserting claims, *inter alia*, for patent infringement and under the Lanham Act and Noble's Counterclaims include claims under the Lanham Act. There is also diversity jurisdiction because the parties are citizens and residents of different states and the amount in controversy exceeds $75,000.  Jurisdiction is furthermore vested in this Court under 28 U.S.C. § 1367 because the state law

claims asserted in this action form part of the same case or controversy as the claims asserted under federal law.

B.   Statement of Facts and Contentions as to Liability:

Argentum Medical commenced this action by asserting claims that Noble Biomaterials ("Noble Biomaterials") and Derma Sciences, Inc. ("Derma") infringed U.S. Patent No. 7,230,153 (the "'153 Patent") by producing and marketing Noble's SILVERSEAL® line of wound and burn dressings.  Argentum Medical also asserted claims under the Lanham Act and for state law unfair competition against Derma.  The Court dismissed Argentum Medical's patent claims and entered summary judgment in favor of Derma upon all remaining claims.  The only claims remaining for trial are Noble's Lanham Act and state law unfair competition and interference with contractual relationship claims.

In its Counterclaims, Noble asserts that counterclaim defendants Thomas Miller and Gregg Silver caused non-party, A. Bart Flick, M.D., to file an application for what became the '153 Patent in an effort to extend patent rights they unlawfully stripped from an independent entity - - Argentum International, Inc. ("Argentum International") - - to prevent Noble from marketing wound and burn dressings produced with a proprietary electroless autocatalytic plating process it has utilized since at least 1977 in competition with Argentum Medical's

2

SILVERLON brand of dressings.  Counterclaim defendants sought to extend

existing patent rights rather than pursue an independent application because they

knew the device claimed in the application for the '153 Patent had been marketed

for many years and they sought to claim the priority date of the earlier patents.  In

an effort to extend these earlier patents claiming upon multi-layer silver metalized

wound dressings that supposedly accelerate wound healing and provide analgesia,

counterclaim defendants claimed without any basis that the single layer medical

devices claimed in the '153 Patent had the same functionality.  They also failed to

disclose to the Patent and Trademark Office ("PTO") that the device claimed in the

'153 Patent had been utilized to treat patients and disclosed in public literature

prior to the filing even of the applications for the earlier patents.

While seeking to obtain a patent on the basis that the claimed device

accelerated wound healing and had analgesic properties, counterclaim defendants

advised the trade that Noble's SILVERSEAL dressings infringed Argentum

Medical's patent rights, even though SILVERSEAL products are marketed solely

as antimicrobial barrier dressings without any claims that they accelerate wound

healing or have analgesic properties.  Promptly after obtaining the '153 Patent,

Miller and Silver caused Argentum Medical to file this action not only against

Noble, but also Derma - - Noble's principal distributor.  Argentum Medical

claimed a right to enforce the '153 Patent based upon an invalid exclusive license

executed as part of a fraudulent scheme to strip Argentum International of its patent rights.

This action involves the use of silver coated dressings in the treatment and care of serious wounds. The antimicrobial properties of silver and other noble metals has been recognized for millennia. Silver is antimicrobial because silver ions destroy all types of bacteria and fungi and many viruses by damaging their cell structure. In the early 20th century, scientists began to harvest these long recognized antimicrobial properties of silver to treat and prevent topical infections. One of the medical devices developed were silver coated wound dressings for use as antimicrobial barrier wound dressings. (As its name implies, a barrier dressing is intended to block microorganisms from reaching a wound.) These dressings are effective in preventing or resolving infections because they gradually release silver ions into the wound.

As early as 1983, reports of the results of research of the antimicrobial properties of nylon fabric coated with silver through an autocatalytic plating process were published in scientific literature. These reports caught Noble's attention because it has been engaged since, at least 1977, in the business of producing metalized (including silver metalized) fibers and fabrics with its own electroless autocatalytic plating process. As fibers and fabrics coated with this

4

process are highly conductive (because they are uniformly coated with silver - - a highly conductive metal), Noble sold them as raw materials in electromagnetic shielding products and to control static electricity discharge. Noble began to explore whether its metalized silver fabric could be utilized as antimicrobial wound care products. For instance, Noble continued and expanded this research by sponsoring studies of the antimicrobial properties of nylon fabrics and fibers coated with silver through the autocatalytic electroless plating process it utilizes.

The published reports of the antimicrobial properties of silver metalized fabric also came to the attention of Dr. Flick, a physician specializing in and researching wound care. He acquired silver metalized fabric from Swift Manufacturing Company (which produces silver metalized fibers and fabric through an autocatalytic process), and thereafter Noble to utilize as antimicrobial barrier wound dressings in treating his patients. In addition to his clinical practice, Dr. Flick was actively researching applying electrical charges to wounds to accelerate or stimulate healing. Flick explored whether wound dressings could be constructed from silver metalized fibers that, as a result of their highly conductive nature, would similarly accelerate or stimulate wound healing without the application of an electric charge.

On September 22, 1997, a patent application was filed on Dr. Flick's behalf claiming upon a wound dressing consisting of multi-layers of silver metalized fibers. It was claimed that, as a result of the highly conductive nature of metalized fiber, multi-layered dressings acted as a gradient that drove the silver ions deep into the tissue and caused cell differentiation. Dedifferentiation is purportedly the process by which normal, mature cells revert to embryonic, unspecialized form, which multiply rapidly and form the "biologic raw material" to rebuild the damaged tissue. The PTO granted this application and issued Patent Number 6,087,549 (the "549 Patent") on July 11, 2000.

Before the '549 Patent was issued, Flick formed Argentum International Inc. ("Argentum International") with Michael Dierkes. Flick and Dierkes induced third-parties to invest over $1 Million in Argentum International ostensibly to fund the clinical trials necessary to obtain Food & Drug Administration ("FDA") approval to market wound dressings covered by the '549 and related Patents. Flick assigned the '549 Patent and any continuation or continuation-in-part patents to Argentum International. Argentum International never conducted clinical trials, however, and instead focused upon selling silver metalized wound dressings Flick was already using in his clinical practice to hospitals and pharmacies. These dressings were sold under the SILVERLON brand. Argentum International purchased the silver metalized fabric for its wound dressings from Noble.

Flick became dissatisfied with the royalties Argentum International committed to pay him for the '549 Patent. He met Miller and, thereafter Silver, and they hatched a scheme to misappropriate Argentum International's assets and business to themselves. They confiscated the "Argentum" name and formed several corporate entities whose name featured the word "Argentum." Flick executed purported assignments of certain of Argentum International's intellectual property rights to these Argentum entities. Argentum Medical is one of the "Argentum" entities that Miller, Silver and Flick formed. It was founded to usurp Argentum International's single layer silver metalized wound dressing business. It began selling these products under the same SILVERLON brand that Argentum International had utilized.

Six of the investors in Argentum International learned of this conduct and filed an action against Flick, Miller, Argentum International, Argentum Research, Inc. (a company Flick formed) and Argentum Professional (one of the entities Flick and Miller formed) in Georgia. After a hearing, the defendants stipulated to the entry of an order prohibiting any further transfer of Argentum International's property, including its rights under the '549 Patent and any continuation or continuation in part patents. A judgment was ultimately entered against Flick and Miller in the Georgia state court upon the plaintiffs' fraud claims and compensatory and punitive damages were awarded against them.

The evidence, including counterclaim defendants' internal e-mails, establishes that Miller and Silver knew of the Georgia court injunction and decided that it constituted a significant impediment to their efforts to obtain control of Argentum International's assets. To overcome this obstacle, Flick executed a back-dated exclusive license from Argentum International to Argentum Medical of the '549 Patent and any continuation or continuation-in-part patents. However, perhaps not completely trusting Miller and Silver, Flick and Dierkes executed an assignment of the '549 Patent and any continuation or continuation-in-part patents to Argentum Research before the exclusive license to Argentum Medical was executed.

Unaware there was any difference between Argentum Medical and Argentum International, Noble sold silver metalized fabric to Argentum Medical for use as wound dressings. Noble also sold silver metalized fibers and fabrics to other manufacturers of wound dressings and bandages. It furthermore continued to sponsor research into the antimicrobial properties of silver metalized fabrics and fibers and marketed a line of clothing containing silver metalized fiber to control odor. (Body odor is caused by bacteria.)

In 1999, Noble advised Argentum Medical that it should pay a royalty upon the sales of SILVERLON wound and burn dressings since they were comprised of

silver metalized fabric coated with Noble's proprietary process. Argentum

Medical objected to paying a royalty and Noble threatened to discontinue selling

metalized fabric to it. While this dispute was defused Noble continued provide

Argentum Medical with metalized fabric for several years. On July 11, 2000,

Argentum Medical caused a patent application to be filed on Flick's behalf as a

purported continuation of the '549 Patent. While generally simply extending the

claims of the '549 Patent on a multi-layer appliance, the July 11 application adds

three claims at the end upon medical devices comprising "at least one layer of

conformable, conductive fabric material having a resistance less than about 1

ohms/cm$^2$ . . . [that] interiorly shifts a pathology's maximum electrical resistance

when in conductive contact with the pathology" by an amount effective to promote

healing and/or induce an analgesic effect.

In the second half of 2004, Noble advised Argentum Medical that it intended

to introduce its own line of silver metalized antimicrobial, barrier wound dressings.

While there are other wound dressings on the market that are coated or

impregnated with silver through various kinds of coating processes, wound

dressings consisting of fabric coated with silver through the electroless

autocatalytic plating process are particularly effective because the fabric is

uniformly coated with silver which facilitates the disassociation of silver ions from

the material. Counterclaim defendants were unwilling to allow Noble to compete

9

against SILVERLON because it was the only entity producing its products with a competitive electroless autocatalytic coating process.

Even before Noble's SILVERSEAL line of wound and burn dressings were introduced, counterclaim defendants advised distributors of wound care products and purchasing agents for hospitals and pharmacies that these products infringed Argentum Medical's patents. Silver instructed Charles Vorndran (an attorney and patent agent) to file an application under Flick's name as a continuation in part of the July 11, 2000 application and claiming upon wound dressings consisting of at least one layer of silver metalized fabric with conductivity in the range of between 10 Ohms/in$^2$ and 0.001 Ohms/in$^2$. This application was filed on April 29, 2005 and issued as the '153 Patent on June 12, 2007. Several months later, Argentum Medical commenced this action against Noble and Derma.

There was no legitimate basis to claim that SILVERSEAL infringed any patent rights of Argentum Medical's patent rights or to pursue this action. As the Court has already held, the exclusive license upon which Argentum Medical based its claim to enforce the Patent was invalid, as Argentum Medical did not own the Patent at the time it was executed. Counterclaims defendants clearly knew this because they participated in the execution of an ineffective nunc pro tunc assignment of the '549 Patent and its continuation and continuation-in-part patents

from Argentum Research to Argentum International.  In any event, the exclusive license was created as part of a fraudulent scheme to strip Argentum Medical of its assets in which Miller has been judicially determined to have participated.

The '153 Patent was invalid and issued only because counterclaim defendants failed to disclose prior art and that it claimed upon the purported discovery of additional functionality for existing products.  The validity of the '153 Patent was addressed at length in summary judgment briefing so it will simply be noted at this point that the grant of the Patent was rescinded when it was subjected to reexamination at the request of another entity against which Argentum Medical had asserted patent infringement claims.[1]  The evidence will demonstrate that counterclaim defendants knew of the pre-existing art at the time the patent application was prosecuted and were personally engaged in selling the products upon whose additional functionality the '153 Patent claimed.

Even if the Patent were valid, there was also no basis to claim that any SILVERSEAL product infringed.  Once again, infringement was extensively briefed in the cross-motions for summary judgment.  It will accordingly simply be noted that Argentum Medical, at the direction of Miller and Silver, sought to

---

[1] While the Patent was again issued, it was significantly amended such that it clearly could not cover SILVERSEAL products.  Even as reissued, the Patent remains invalid.

11

extend the '153 Patent beyond what was represented to be its patentable subject matter in claiming infringement against Noble. The apparatus claimed in the '153 Patent was claimed in the application and specifications to accelerate wound healing and provide analgesia. It was claimed that healthy human skin exhibits an electrical potential across the epithelium, referred to as the transepithelial potential, generated by an active ion transfer system. Damage to the skin (such as wounds or burns) supposedly disrupts the transepithelial potential and the tissue's normal electrical charge, and thereby inhibits tissue repair. It is asserted that, when placed over both healthy tissue and the wound, the apparatus claimed in the '153 Patent transmits the normal electrical charge from the healthy skin (as well as an area of "lateral potential" close to the margin of the wound) to the injured area, which purportedly contributes to normalizing the transepithelial potential and accelerating wound healing. It is also asserted that normalizing the transepithelial potential has an analgesic effect because it terminates the nerve impulse for the sensation of pain. There is no evidence in this case that Noble ever marketed SILVERSEAL products as capable of accelerating wound healing or providing analgesia or that any such SILVERSEAL product has any such functionality. In this case, Argentum Medical argued that SILVERSEAL wound and burn dressings infringe the '153 Patent when used simply as antimicrobial barrier dressings.

Counterclaim defendants clearly misused the patent process in an effort to injure Noble competitive position and stifle competition. This is evident by the timing of the patent application - - immediately after Noble began marketing SILVERSEAL - - and that it was Silver, not Flick (the supposed inventor), who instigated its filing and controlled the prosecution. There is also nothing in the patent application, specifications or evidentiary record that reflect Flick's discovery that single layer, silver metalized nylon fabric wound dressings accelerate wound healing or provide analgesia, or the mechanism of action by which this might occur. There is no evidence of in vitro or clinical testing of the ability of silver metalized fabric to determine whether it accelerates wound healing and/or analgesic provides analgesia. All of the case studies reported in the Patent expressly involve multi-layer dressings.

There was no reason to join Derma to this litigation other than to dissuade it from continuing to distribute SILVERSEAL dressings. Argentum Medical could not recover additional damages from Derma beyond what would have been awardable against Noble. The Court's summary judgment ruling demonstrates that Argentum Medical lacked a factual basis for the Lanham Act and state law unfair competition claims it asserted.

The combination of counterclaim defendants' advising the trade that SILVERSEAL infringed Argentum Medical's patents and subsequent filing of this action, which appeared to give credence to its assertions, had the intended affect on the SILVERSEAL product line.  Sales of SILVERSEAL wound and burn dressings initially reached their targets, but then rapidly diminished.  Noble will present testimony from distributors and customers, including from Derma, that counterclaim defendants' patent infringement assertions dissuaded them from purchasing from Noble or working to build the SILVERSEAL product line.  Noble suffered over $700,000 in lost sales as a result of counterclaim defendants' actions.

Noble has also incurred substantial fees and costs in defending claims that never should have been instituted.   It will seek recovery of its fees and costs as damages and as costs on the grounds that this is an exceptional case.

C.     <u>Statement of Undisputed Facts</u>:  Attached hereto as Exhibit A.

D.     <u>Statement of Damages Sought</u>:  Noble's damages include:  $700,000 in compensatory damages representing lost business; punitive damages; Noble's attorneys' fees incurred in defending against Argentum's patent infringement claims brought in bad faith; the costs incurred by Noble in correcting counterclaim defendants' disparaging and inaccurate claims to distribution channels and end market users; and Noble's attorneys' fees and costs of evaluating Argentum's

14

patents and defending this action.  Noble intends to file a motion for its attorneys'
fees on the grounds that this is an exceptional case.

E.   Names and addresses of witnesses:

1.   Frank McNally
     300 Palm Street
     PO Box 1279
     Scranton, PA 18501

2.   Joel Furey c/o Noble
     300 N. Hallow Rd.
     Stowe, VT 05672

3.   James Walsh c/o Noble
     300 Palm Street
     Scranton, PA 18505

4.   A. Bart Flick (by deposition)
     8842 Winding Way #524
     Fair Oaks, CA  95628

5.   Thomas Miller (as on cross)
     240 81st Street
     Willowbrook, IL 60527

6.   Gregg Silver (as on cross)
     240 81st Street
     Willowbrook, IL 60527

7.   Kenneth Biddick (expert)
     Severan Professional Mews
     200 A Kings Way West
     Turnersville, NJ 08012

     Specialties and qualifications:  Kenneth Biddick is a shareholder of
     Kenneth Biddick & Co., P.C.  Biddick is a licensed CPA in New
     Jersey and New York, and is certified in Financial Forensics by the

AICPA and a Certified Fraud Examiner.  Biddick's professional qualifications and list of testimony is attached hereto as Exhibit B.

8.    Patricia Davidson
      1123 Celebrant Dr.
      Jacksonville, FL 32225

9.    Jeffrey Glattley
      1017 Woodland Way
      Clarks Summit, PA 18411

10.   Robert Cole
      214 Carnegie Ctr. Suite 100
      Princeton, NJ 08540

11.   Nancy Dobson
      735 Jefferson Ave.
      Scranton, PA 18510

12.   William McNally
      421 South State Street
      Clarks, PA 18411

13.   Ronald Flormann – c/o Noble

14.   Erich Buntz – c/o Noble

15.   Joseph Diehl – c/o Noble

16.   Jeffrey Keene – c/o Noble

17.   Bob Low c/o J&D Wilkie

18.   Curt Matheson

F.    Summary of Expert Testimony:   Kenneth Biddick will testify as to the

damages sustained by Counterclaim Plaintiff, Noble Biomaterials, as a result of

Counterclaim Defendants' misrepresentations to distribution channels and end

market users regarding Noble's alleged infringement of Counterclaim Defendants' product.

G.    Special Comment about Pleadings and Discovery: None at this juncture.

H.    Summary of Legal Issues and Legal Authorities:

(1)  Noble will ask the Court to find that counterclaim defendants' conduct in bringing a baseless patent infringement claim against Noble – knowing they did not have right to enforce the patent, knowing the patent was invalid, and knowing that the patent could never apply to Noble's product – constitutes unfair competition. *See, e.g., PennPav Int'l, Inc. v. Rotonics Manufacturing, Inc.*, No. 99-2890, 2001 U.S. Dist. LEXIS 6842, at *28-29 (E.D. Pa. May 25, 2001).

(2)  Noble will ask the Court to find that counterclaim defendants' conduct in misrepresenting to distribution channels and end market users that Noble allegedly infringed Counterclaim Defendants' patent satisfies a claim for unfair competition, violation of the Lanham Act, and product disparagement, specifically the bad faith element. *See, e.g., Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340 (Fed. Cir. 1999); *Corsage Collection, Inc. v. GN Diamond, LLC*, 2009 WL 838313 (E.D. Pa. Mar. 27, 2009); *Mixing Equipment Co., Inc. v. Innova-Tech, Inc.*, 1985 WL 2764 (E.D. Pa. Sept. 26, 1985); *PennPav Int'l*, 2001 U.S. Dist. LEXIS 6842, at *39-40.

(3)  Noble will ask the Court to find that counterclaim defendants are bound under principles of collateral estoppel to the judgment of the Georgia state court case, holding that the 1997 license from Argentum International to Argentum Medical was signed as part of a fraudulent scheme. *Walzer v. Muriel, Siebert & Co., Inc.*, 221 Fed. Appx. 153, 155 (3d Cir. 2007); *Kent v. Kent*, 265 Ga. 211 (1995); *QOS Networks Ltd. v. Warburg, Pincus & Co.*, 294 Ga.App. 528, 534 (Ga. App. 2008).

(4)  Noble will ask the Court to find that it is entitled to fees in this action on the grounds that it is an "exceptional case." *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 47 (3d Cir. 1991); *Sweetzel, Inc. v. Hawk Hill Cookies, Inc.*, 1996 WL 355357 (E.D. Pa. Jun. 19, 1996).

I.    Stipulations Desired: None at this juncture.

J.    Estimated Number of Trial Days: 5.

K.      Any Other Matter Pertinent to the Case to be Tried:

        (1) Counterclaim Plaintiff requests that the Court regard Noble Biomaterials as the plaintiff in this action;

        (2) Counterclaim Plaintiff requests that the Court instruct the jury that Counterclaim Defendant, Argentum Medical, did not own the '153 Patent and did not have the right to enforce the patent.

L.      Prenumbered Schedule of Exhibits:  See Exhibit C.

M.      Special Verdict Questions Counsel Desires to Submit:  Not at this juncture.

N.      Defense Counsel Statement Regarding Settlement Authority:  Not applicable.

O.      Certificate Pursuant to Rule 30.10:  Because counsel for Counterclaim Plaintiffs and Counterclaim Defendants are in Pennsylvania and Illinois, respectively, counsel met telephonically on December 22, 2010.  Counsel intend to meet in person prior to the pretrial conference to review exhibits.

P.      Requests for Findings of Fact and Law:  Not applicable.


                        Respectfully submitted,
                        COZEN O'CONNOR

                        BY:    /s/ Robert W. Hayes
                               Robert W. Hayes (33099)
                               1900 Market Street
                               Philadelphia, PA 19103
                               (215)665-2094
                               Rhayes@cozen.com

                               *Attorneys for Defendant/*
                               *Counterclaim Plaintiff,*
                               *Noble Biomaterials*


Dated:  December 22, 2010

# Exhibit A

## STATEMENT OF UNDISPUTED FACTS

1.     Noble Biomaterials is organized and existing under the laws of the State of Delaware.

2.     Noble traces its origins to the Sauquoit Silk Company which began operations as a cotton spinning mill over a hundred years ago.  For many years, Noble operated under the name of Sauquoit Industries, Inc.

3.     Noble's manufacturing facility and headquarters are located in Scranton.

4.     The antimicrobial property - - the ability to kill germs - - of silver has been recognized for thousands of years.

5.     Silver is highly toxic to germs because silver ions damage their cellular structure.

6.     One problem was that exposure to silver can also damage healthy skin.  Another problem was that, as silver is metallic, it is not easily conformable to the body, and uncomfortable if directly applied to a wound.

7.     On July 11, 2000, the Patent and Trademark Office granted the application filed on Dr. Flick's behalf and Patent Number 6,087,549 was issued. This Patent will be referred to as the "'549 Patent."

8.     Flick accordingly transferred ownership of the '549 Patent and to any continuation or continuation-in-part patents to Argentum International.  In

laymen's terms, a continuation is a separate patent that includes additional patent claims based upon inventions disclosed in an earlier patent. A continuation-in-part patent is a separate patent that states additional patent claims based in part on disclosures made in an earlier patent and in part upon new disclosures.

9.     In March 2002, Miller and Silver and Dr. Flick founded counterclaim defendant Argentum Medical LLC. Argentum Medical maintains its offices in Chicago, Illinois.

10.     Silver is the Chief Executive Officer and Miller the President of Argentum Medical.

11.     Miller and Silver own interests in Argentum Medical.

12.     Noble began selling single layer, silver metalized barrier wound and burn dressings under the SILVERSEAL® brand in June 2005.

13.     The PTO granted application number 11/119/354 and patent number 7,230,153 (the "'153 Patent"') was issued.

14.     Argentum Medical commenced this action claiming that SILVERSEAL wound and burn dressings infringe the '153 Patent.

## CERTIFICATE OF SERVICE

I certify that on this date, I caused the foregoing PRETRIAL MEMORANDUM OF COUNTERCLAIM PLAINTIFF NOBLE BIOMATERIALS to be served upon all counsel of record via the Court's ECF filing system.

/s/ Robert W. Hayes

Dated:  December 22, 2010

# Exhibit B

## KENNETH BIDDICK
kb@kbconsultinggroup.com



Ken is a Certified Public Accountant (CPA) in the states of New Jersey and New York, a Certified Fraud Examiner (CFE), and Certified in Financial Forensics (CFF).

## Professional Experience

- Forensic and investigative accounting

- Accounting and auditing evaluations
    - Financial reporting involving application of generally accepted accounting principles and statutory accounting principals
    - Adherence to professional standards

- Insurance claims management, investigations, subrogation
    - Business interruption and rental loss
    - Property loss
    - Fidelity

- Damages calculations
    - Breach of contract
    - Breach of warranty
    - Professional negligence
    - Construction disputes
    - Intellectual property
    - Fraud
    - Lender liability

- Lost profits analysis

- Valuation calculations of business entities

- Other business consulting services
    - Alter ego and piercing the corporate veil
    - Personal injury, wrongful death, wrongful termination, discrimination & damage calculations
    - Bankruptcy matters

## Relevant Employment History

- UHY Advisors FLVS, Inc. in 2005 - 2008
- KB Consulting Group 1993 - Current
- Ernst & Young 1989
- Pannell Kerr Forster 1985
- BDO Seidman 1982
- Edmund D Bowman Co 1979

**KENNETH BIDDICK**
Page 2

## Educational Background

- B.A. in Accounting from Rutgers, Camden (1979)

## Active and Prior Professional Memberships

- American Institute of Certified Public Accountants
- New Jersey Society of Certified Public Accountants
- Association of Certified Fraud Examiners
- Licensing Executives Society

## Active and Prior Civic Memberships

- Co-Chair – Alzheimer's Association of the Delaware Valley – Chocolate Symphony Event
- Chair – Workforce and Economic Development Committee – Gloucester County Workforce Investment Board
- Chair – Welfare to Work Committee – Gloucester County Workforce Investment Board
- Co-Chair – Advisory Board of Economic Development – Washington Twp
- Member – Gloucester County Economic Development
- Rutgers Center for Entrepreneurship, Accountancy Advisory Committee
- Rutgers School of Business Alumni, Member of Board of Directors
- Rutgers School of Business, Guest Lecturer

## Publications and Speaking Engagements

- *"Think big when protecting small business from employee theft,"* Nation's Restaurant News , Sept 6, 2004
- *"Managing Your Risks For The Future,"* Institute of Internal Auditors 1996 Spring Conference
- *"Accounting Malpractice,"* New Jersey Society of Certified Public Accountants, Litigation Services Conference
- *"What It Means To Be A Professional In The Practice Of Public Accounting,"* Putterman, Rush & Shapiro, LLP
- *"Corporate Crisis Management,"* European-American General Counsels
- New Jersey Society of Certified Public Accountants, Southwest Chapter Malpractice Claims
- *"Business Evaluations,"* Gloucester County Bar Association, Family Law Section
- CFMA's Annual Conference and Exhibition, *Impact of Disaster Recovery,* May 2006
- AICPA National Conference on Fraud and Litigation, *Business Interruption Claims,* September 2006
- CLE Presentations, Financial Fraud, Baker Hostetter, 2006; Fulbright & Jaworski, 2007
- Baruch College - CUNY, Instructor *Ethics in Law and Forensic Accounting,* Fall Semester 2006, 2007, Summer 2008, Winter 2009, *Investigating and Reporting Financial Fraud,* Winter 2008

**KENNETH BIDDICK**
Page 3

### Testimony Experience:

- *William P. Bradley v. North American Communications, Inc.*, Hollidaysburg, PA
  *Court of Common Pleas Commonwealth of Pennsylvania*
  *Case No.: 1273 Pittsburgh, 1990*

- *Alpha Technologies, Inc. v. Dovetail Systems Corp. et. al..*
  *Superior Court State of Washington, County of Whatom*
  *Case No.: 89 2 01173 1*

- Merit Metal Products, Inc. v. Melvin Silverman
  Court of Common Pleas Commonwealth of Pennsylvania, County of Bucks
  Case No.: 86-6805

- *Lease-A-Fleet, Inc. v. Morse Operations, Inc. d/b/a Lauderhill Leasing, et. al.*
  United States Bankruptcy Court, Eastern District of Pennsylvania
  Case No.: 91-CV-4865

- *Lease-A-Fleet, Inc. v. Morse Operations, Inc. d/b/a Lauderhill Leasing, et. al.*
  United States District Court of the Eastern District of Pennsylvania
  Case No.: 92-4000

- *Howell Manufacturing Company v. Paoli Door, Inc.*
  United States District Court of the Eastern District of Pennsylvania
  Case No.: 95-3243

- *The Aetna Casualty and Surety Company v. Jones Lang Wooten, USA and ER*
  *Associates and The Equitable Life Assurance Society of the United States and Pan American Office*
  *Investments and USA One Associates*
  United States District Court for the Southern District of New York
  Case No.: 93-CV-0892

- *Victor Desiderio v. The Quarterdeck Condominium Association, Inc.*
  United States District Court of New Jersey-Camden
  Docket No. 97CV3729

- *Thomas C. Thompson v. MMC*
  Court of Common Pleas Commonwealth of Pennsylvania, Delaware County
  Civil Action No. 94-8987 (Testimony included Daubert challenge)

- *Clark Capital Management Group, Inc. v. Summit Bancorp, Summit Bank (Inc.) and Summit Financial*
  *Services Group (Inc.)*
  United States District Court for the Eastern District of Pennsylvania
  Civil Action No. 99-CV-1102

- *Hygienics Direct Company, et al v. Medline Industries, Inc. et. al. and Child Health Corporation of*
  *America, and the Alliance for Children's Hospitals, Inc.*
  United States District Court for the Eastern District of Pennsylvania
  Civil Action No. 98-CV-3883

- *Spearhead Development of Pennsylvania, Limited v. Michael J. Gerstein*
  United States District Court for the Eastern District of Pennsylvania
  Civil Action No. 99-1352 (Daubert challenge)

- *Gail S. Bazzano, Ph.D. v. Adam Lewenberg, M.D., PLLC*
  United States District Court for the Eastern District of Louisiana
  Civil Action No. 99-3005

**KENNETH BIDDICK**
Page 4

- *Realen Gateway Development Associates, L.P. v. Regal Cinemas, Inc.*
  Court of Common Pleas of Delaware County, Pennsylvania
  Civil Action No. 98-17469

- *Main Street Mortgage, Inc. v. Main Street Bancorp., Inc.*
  United States District Court for the Eastern District of Pennsylvania
  Civil Action No. 99-CV-6601

- *Nancy Wilson v. Wal Mart Stores, d/b/a Sam's Club; K-Mart Stores d/b/a Pace Membership Warehouse; Rocco Gallo, individually, jointly and in the alternative*
  Superior Court of New Jersey Law Division, Gloucester County
  Civil Action No. 460-96

- *Janney Montgomery Scott, LLP v. Philip E. Lonergan*
  NASD Philadelphia, PA

- *Clark Capital Management Group, Inc. v. Annuity Investors*
  United States District Court for the Eastern District of Pennsylvania
  Civil Action No. 00-CV-1959

- *I.D. Lite, Inc. v. Directed Electronics, Inc.*
  United States District Court for the Southern District of Florida
  Civil Action No. 02-CV-80282

- *The Kingsley Group and DeMarco Allen v. Kellogg USA, Inc.*
  United States District Court for the Northern District of Illinois Eastern Division
  Civil Action No. 01-CV-9924

- *Keith G. Farley v. Barry R. Sharer, et al.*
  Superior Court of New Jersey Law Division, Camden County
  Docket No. L-1897-02

- *Gabriel Weisz v. Liberty Capital LLC, et al.*
  NASD New York, NY

- *WINfertility, Inc. v. IntegraMed America, Inc.*
  Supreme Court of the State of New York, Westchester County
  Civil Court Index No. 9427/2002

- *Drexel University v. Santa Fe Science and Technology, Incorporated*
  United States District Court for the Eastern District of Pennsylvania
  Civil Action No. 02-CV-0266

- *Guardian Door & Window, Inc. v. Guida, Inc. et al.*
  In the Circuit Court for Prince George's County, Maryland
  Civil Action No. CAL 03-07900

- *Stephen E. Moor v. Honeywell International Inc., et al.*
  United States District Court for the District of New Jersey
  Civil Action No. 02cv3142 (FSH)

- *David Haas v. Weichert Lead Network, Inc..*
  United States District Court for the District of New Jersey
  Civil Action No. 07cv3085 (KSH)(PS)

# Exhibit C

## LIST OF EXHIBITS

CASE CAPTION:   Argentum Medical, LLC v. Noble Biomaterials and Derma     CASE NUMBER:   3:08-CV-01305
Sciences, Inc.

Noble Biomaterials v. Argentum Medical, LLC, Thomas Miller and     JUDGE:   Honorable A. Richard Caputo
Gregg Silver

MIDDLE DISTRICT OF PENNSYLVANIA

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 1 | | United States Patent No. 6,087,549 | | | | |
| 2 | | United States Patent No. 7,214,847 | | | | |
| 3 | | United States Patent No. 7,230,153 ("'153 Patent") | | | | |
| 4 | | January 24, 2010 Non-Final Rejection of Application for '153 Patent on Reexamination | | | | |
| 5 | | Memorandum Opinion and Order dismissing Argentum Medical's Complaint in the above-captioned action | | | | |
| 6 | | United Patent and Trademark Office, Rejection of Patent Application for 153 Patent | | | | |
| 7 | | Email (7/2/05) from Bob Low to Patricia Davidson. | | | | |
| 8 | | Argentum Medical's Supplemental response to Interrogatory 17 | | | | |
| 9 | | Email from Nancy Dobson (May 15, 2006) (Davidson Dep. Ex. 59) | | | | |
| 10 | | Email from Ronald Flormann (Sept. 8, 2007) (Davidson Dep. Ex. 60) | | | | |
| 11 | | Health Care Performance Plan for 2007 sales (Davidson Dep. Ex. 61) | | | | |

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 12 | | Derma Sciences Inc Spreadsheet - Silverseal sales  (Cole Dep. Ex. 53) | | | | |
| 13 | | Derma Sciences, Inc.'s spreadsheet - Silverseal sales and Margin dated 7/7/09  (Cole Dep. Ex. 54) | | | | |
| 14 | | Historical Sales 2006 to the present for Silverseal | | | | |
| 15 | | Summary of Sales by Quarter for 2005 for Silverseal | | | | |
| 16 | | Summary of Sales By Product for Noble | | | | |
| 17 | | Cozen O'Connor invoices | | | | |
| 18 | | Noble billing records reflecting amounts paid to Cozen O'Connor | | | | |
| 19 | | The Global Market for Advancement of Wound Care Products 2007 (Exhibit to Biddick Report) | | | | |
| 20 | | Silverseal sales forecast  (Exhibit to Biddick Report) | | | | |
| 21 | | I-Flow Quarterly Report (Exhibit to Biddick Report) | | | | |
| 22 | | Wound Source Product Comparison  (Exhibit to Biddick Report) | | | | |
| 23 | | Derma Sciences, Inc. Company Profile  (Exhibit to Biddick Report) | | | | |
| 24 | | Smith & Nephew Company Profile  (Exhibit to Biddick Report) | | | | |
| 25 | | Article Announcing FDA approval of Invitrogen (Exhibit to Biddick Report) | | | | |
| 26 | | Saucfall Symposium, Silver AntimicrobialDressings in Wound Management: A Comparison of Antibacterial, Physical and Chemical Characteristics  (Exhibit to Biddick Report) | | | | |

2

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 27 | | Principles of Best Practice, *Wound Infection in Clinical Practice: An International Consensus* | | | | |
| 28 | | Noble Profit and loss, gross margin calculations and sales data statements | | | | |
| 29 | | Report of X-Static Antibacterial Performance by Tokai University, Japan. (Furey Verification Ex. 1) | | | | |
| 30 | | Tokai University Report of Testing of Island Silver Dressing (Furey Verification Ex. 2) | | | | |
| 31 | | January 11, 1999 Report on *Pharmacological Test on the Curative Effect of Adhesive Plaster with Silver Pad – The Healing of Excised Wound from Rat Skin* | | | | |
| 32 | | August 4, 1999. Letter from Collins to Miller  (Miller Dep. Ex. 2) | | | | |
| 33 | | September 14, 1999. Letter from Collins to Miller (Miller Dep. Ex. 3) | | | | |
| 34 | | October 5, 2001. Memorandum submitted by Dr. Flick, Mr. Miller and Mr. Silver to David, John and Rich. (ARG 002723) (Miller Dep. Ex. 4) | | | | |
| 35 | | November 24, 1987 letter from C.C. Chu, Associate Professor, Cornell University, to Frank T. McNally; | | | | |
| 36 | | February 26, 2002. Copies of a bill from Freeborn and Peters. (ARG 000013) (Miller Dep. Ex. 6) | | | | |
| 37 | | May 5, 2006. True and correct copy of email from Bart Flick to Mr. Miller (ARG 000798) (Miller Dep. Ex. 7) | | | | |
| 38 | | May 5, 2006. True and correct copy of email from Mr. Miller to Dr. Flick (ARG 000799) (Miller Dep. Ex. 8) | | | | |
| 39 | | Website page – Company Biography (ARG 001349) (Miller Dep. Ex. 9) | | | | |

3

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|-----|-----|-------------------------------|------------|----------|--------|------------------|
| 40 | | December 4, 2006. Letter from Dr. Flick to Tom Miller (ARG 003509-10) (Silver Dep. Ex. 2) | | | | |
| 41 | | September 25, 1998. Letter from Celia M. Witten, PhD. Office of General and Restorative Devices. Department of Health and Human Services. (PABST 003609-10) (Silver Dep. Ex. 3) | | | | |
| 42 | | Argentum Medical Sales by Product 2001 – 2009. Single layer Dressing Only. (chart) (ARG 007643-52) (Silver Dep. Ex. 5) | | | | |
| 43 | | December 18, 2006. Letter to Dr. Flick from John C. Stiefel of Freeborn and Peters, LLP. (ARG 000765-767) (Silver Dep. Ex. 6) | | | | |
| 44 | | January 30, 2007. Letter to Tom Miller and John Stiefel from Richard Douglas. (ARG 003515-17) (Silver Dep. Ex. 7) | | | | |
| 45 | | October 23, 2008. Order Granting Plaintiff's Motion Based on the Crime Fraud Exception. (Silver Dep. Ex. 8) | | | | |
| 46 | | Ad page. Silver-Charged Wound Contact Dressing Advanced Antimicrobial Protection (ARG 007180-7261) (Silver Dep. Ex. 9) | | | | |
| 47 | | Marino, A.A. *et al.*, "Electrochemical Properties of Silver-Nylon Fabrics," *J., Electrochem. Soc.*, 132(1):68-72 (January 1985) | | | | |
| 48 | | U.S. Pat. No. 5,275,861 to Vaughn, issued January 4, 1994 | | | | |
| 49 | | PCT Application Publication No. WO 98/06509 to Gabbay, published, February 19, 1998 | | | | |
| 50 | | U.S. Pat. No. 4,181,127 to Linsky et al., issued Jan. 1, 1980 | | | | |

4

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|-----|-----|-------------------------------|------------|----------|--------|------------------|
| 51 | . | Chu, C.C. et al, Newly Made Antibacterial Braided Nylon Sutures – I. In Vitro Qualitative and In Vivo Preliminary Biocompatibility Study, J. OF BIOMEDICAL MATERIALS RESEARCH, Vol. 21, 1281-1300 (1987) | | | | |
| 52 | . | Chu, Chi-Sing, *et al, Therapeutic effects of Silver Nylon Dressing with Weak Direct Current on Pseudomonas Aeruginosa- Infected Burn Wounds* | | | | |
| 53 | | Yin, H.Q., *et al, Comparative Evaluation of the Antimicrobial Activity of ACTICOAT Antimicrobial Barrier Dressing* | | | | |
| 54 | | Tsai, W.C., *In Vitro Quantitative Study of Newly Made Antibacterial Braided Nylon Sutures*, SURGERY, GYNECOLOGY & OBSTETRICS, September 1987, Vol. 165, pp. 207-211 | | | | |
| 55 | | MacKeen, Patricia C. *et al, Silver-Coated Nylon Fiber as an Antibacterial Agent*, ANTIMICROBIAL AGENTS AND CHEMOTHERAPY, JANUARY 1987, pp. 93-99. | | | | |
| 56 | | Germany Patent Specification No. 863,875, *Improved Metalized Wound* Dressing, Application Date: May 11, 1957 | | | | |
| 57 | | United States Patent No. 2,934,066, *Metalized Bandaging Material Especially for the Treatment of Wounds*, Priority Date (Germany) May 11, 1957 | | | | |
| 58 | | United States Patent No. 4,728,323, *Antimicrobial Wound Dressings*, Application Date: July 24, 1986 | | | | |
| 59 | | United States Patent No. 3,596,657, *Thermally Conductive Surgical Dressing*, February 14, 1969 | | | | |
| 60 | | Federal Food & Drug Administration Form 510(k) Summary for Westaim Technologies, Inc.'s Acticoat™ Silver Coated Dressings. | | | | |

PHILADELPHIA\5832250\1  220312.000

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 61 | | Deitch, Edwin A., et al, *Silver-Nylon: A new Antimicrobial Agent*, ANTIMICROBIAL AGENTS AND CHEMOTHERAPY, March 1983, p. 356-359. | | | | |
| 62 | | Crannell, M.Y., *Silver in Medicine*, SILVER: ECONOMICS, METALLURGY AND USE. 1975. | | | | |
| 63 | | Thurman, Robert B., *et al, The Molecular Mechanisms of Copper and Silver Ion Disinfection of Bacteria and Viruses*, CRC CRITICAL REVIEWS IN ENVIRONMENTAL CONTROLS, Vol. 18, Issue 4 (1989). | | | | |
| 64 | | Silverlon Product Brochure circa 1998. | | | | |
| 65 | | Federal Food & Drug Administration Form 510(k) Summary for Silverlon. | | | | |
| 66 | | Burrell, Robert E., et al, Comparative Evaluation of The Antimicrobial Activity of Anticoat Antimicrobial Barrier Dressing, J BURN CARE REHAB, 1999, 20:195-200. | | | | |
| 67 | | Burrell, Robert E., et al, Wound Management in An Era of Increasing Bacterial Antibiotic Resistance: A Role for Topical Silver Treatment, AJIC AM J INFECTION CONTROL, 1998, 26:572-577. | | | | |
| 68 | | Burrell, Robert E., et al, A Matched-Pair, Randomized Study Evaluating The Efficacy and Safety of Anticoat Silver Coated Dressing for The Treatment of Burn Wounds, J BURN CARE REHAB, 1998, 19:531-537. | | | | |
| 69 | | Burrell, Robert E., et al, Efficacy of Silver-Coated Dressings As Bacterial Barriers In A Rodent Burn Sepsis Model, WOUNDS, 1999, 11(4):64-71. | | | | |
| 70 | | Burrell, Robert E., *et al, Efficacy of Topical Silver Against Fungal Burn Wound Pathogens*, AJIC AM J INFECTION CONTROL, 1999, 27:344-350. | | | | |

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 71 | | United Kingdom Patent Specification No. 363, 255, *Improvements in Wound Dressings*, Convention Date (Germany) June 12, 1930. | | | | |
| 72 | | Germany Patent Specification No. 863,875, *Improved Metalized Wound* Dressing, Application Date: May 11, 1957. | | | | |
| 73 | | United States Food & Drug Administration ["FDA"] 510(k) Premarket Notification | | | | |
| 74 | | 3M Australia website description of Tegapore | | | | |
| 75 | | SMTL Datacard for ACTICOAT, Exhibit "N" hereto | | | | |
| 76 | | Transcript of in Camera Conference, <u>Hal Woods, et al. v. Argentum International, LLC., et al.</u>, United States District Court for the Northern District of Georgia | | | | |
| 77 | | <u>Argentum International, Inc. v. Woods</u>, 634 S.E.2d 195, 198 (Ga. Ct. App. 2006) | | | | |
| 78 | | July 21, 1987, letter from Dr. Flick to Frank McNally (Bates ARG-008085) | | | | |
| 79 | | Memorialize telephone conversation with John Scofield (Bates ARG-008093) | | | | |
| 80 | | September 9, 1994 – Phone conversation with John Scofield (Bates ARG-008091) | | | | |
| 81 | | January 18, 1994 Memorandum from John Scofield to Dr. Flick. (Bates ARG-008088) | | | | |
| 82 | | November 29, 1994 note prepared by Dr. Flick of telephone conversation with John Scofield. (Bates ARG-008092) | | | | |
| 83 | | January 11, 1995 note prepared by Dr. Flick of telephone conversation with John Scofield. (Bates ARG-008094) | | | | |

7

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|-----|-----|-------------------------------|------------|----------|--------|------------------|
| 84 | | January 13, 1995. Letter to Dr. Flick from John Scofield. (Bates ARG-008095) | | | | |
| 85 | | March 15, 1995 memorandum from Dr. Flick summarizing telephone conversation with John Scofield. (Bates ARG-008097) | | | | |
| 86 | | June 10, 1998. Memorandum from Rich Westlake (CEO of Argentum Int'l). (Bates ARG-008120) | | | | |
| 87 | | April 23, 1997. Letter from Dr. Flick to Jess Hornsby at Sauqoit. (Bates ARG-008103) | | | | |
| 88 | | Charted time line of license agreements. (Bates ARG-000836-843) | | | | |
| 89 | | Assignment of Patent of what became the 549 Patent. (REEL:011592 Frame: 0333 – 334) | | | | |
| 90 | | Corrected copy of Form PTO-1595 from the Patent and Trademark Office (Reel 11701 Frame 0272) | | | | |
| 91 | | Patent Application 09/531,245 (Reel 11596 Frame 0510) | | | | |
| 92 | | True and Correct copy of Judgment on Hal Woods v. Argentum. | | | | |

PHILADELPHIA\5832250\1  220312.000