# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOBLE BIOMATERIALS, | : | |
| | : | |
| Plaintiff, | : | No. 3:08-cv-01305 |
| | : | |
| v. | : | |
| | : | HONORABLE A. RICHARD |
| | : | CAPUTO |
| ARGENTUM MEDICAL, LLC, | : | |
| THOMAS MILLER AND | : | |
| GREGG SILVER | : | |
| | : | |
| Defendants. | : | |

---

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND RELATED NONTAXABLE EXPENSES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(D)(2)

COZEN O'CONNOR
Robert W. Hayes (33099)
1900 Market Street
Philadelphia, PA 19103
(215) 665-2095
rhayes@cozen.com
*Attorneys for Plaintiff, Noble Biomaterials*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................. 2

STATEMENT OF THE QUESTIONS INVOLVED ................................................... 8

ARGUMENT .............................................................................................................. 8

    A.   Noble Should Be Awarded All of the Attorneys' Fees and Expenses It Incurred
        in this Litigation Pursuant to Section 1117(a) of the Lanham Act ................................... 12

        1.   Defendants Could Not Have Reasonably Believed That Argentum Medical
            Had Standing to Enforce the '153 Patent ..................................................................... 13

        2.   The '153 Patent Would Not Have Been Issued Except for Argentum Medical's
            and Silver's Inequitable Conduct Before the PTO ................................................... 16

    B.   Noble Should At Least Recover Its Fees and Costs Through the Denial of
        Argentum Medical's Motion for Consideration under the Patent Act ............................ 19

    C.   The Court Should Exercise Its Discretion to Award Fees and Costs ............................... 19

CONCLUSION ............................................................................................................ 21

i

# Table of Authorities

**Page(s)**

CASES

Am. Eagle Outfitters, Inc. v. Lyle & Scott Ltd.,
   No. 06-0607, 2009 U.S. Dist. LEXIS 86057 (W.D. Pa. Sept. 21, 2009) ...................................9

Andrews v. City of Philadelphia,
   895 F.2d 1469 (3d Cir. 1990)..................................................................................................10

Argentum International, Inc. v. Woods,
   634 S.E.2d 195 (Ga. Ct. App. 2006) ..................................................................................13, 15

Argentum Medical, LLC v. Noble Biomaterials,
   No. 3:08-CV-1305 ................................................................................................................6, 7

Arlington Indus., Inc. v. Bridgeport Fittings, Inc.,
   No. 3:01-cv-0485, at *5-6 (M.D. Pa. Mar. 10, 2010) ..............................................................13

Diekelman v. U.S.,
   8 Ct.Cl. 371 (1872), rev'd on other grounds, 92 U.S. 520 (1875).............................................15

Dodge Regupol, Inc. v. RB Rubber Prods., Inc.,
   585 F. Supp. 2d 645 (M.D. Pa. Nov. 12, 2008) ........................................................................8

Eltech Sys. Corp. v. PPG Indus., Inc.,
   903 F.2d 805 (Fed. Cir. 1990)..................................................................................................13

Green v. Fornario,
   486 F.3d 100 (3d Cir. 2007).......................................................................................................9

iLor, LLC v. Google, Inc.,
   No. 2010-1117, 1172, 2011 U.S. Dist. LEXIS 516 (Fed. Cir. Jan. 11, 2011) ....................11, 13

J.P. Stevens Co., Inc. v. Lex Tex Ltd., Inc.,
   822 F.2d 1047 (Fed. Cir. 1987).................................................................................................9

J.P. Stevens Dodge-Regupol, Inc. v. RB Rubber Prods., Inc.,
   No. 3:06-cv-236, 2010 U.S. Dist. LEXIS 31838 (M.D. Pa. Mar. 31, 2010) .............................9

Mach. Corp. of Am. v. Gullfiber AB,
   774 F.2d 467 (Fed. Cir. 1985)...................................................................................................9

Nilssen v. Osram Sylvania, Inc.,
   528 F.3d 1352 (Fed. Cir. 2008).................................................................................................20

Phillips v. Cricket Lighters,
    584 Pa. 179, 883 A.2d 439 (2005) ................................................................................11

PowerOasis, Inc. v. T-Mobile USA, Inc.,
    522 F.3d 1299 (Fed Cir. 2008) ..............................................................................16, 17

Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.,
    No. 80-0268, 1986 U.S. Dist. LEXIS 28564 (E.D. Pa. Mar. 5, 1986) .................8, 9, 19

Pro Golf Mfg. v. Tribune Review Newspaper Co.,
    570 Pa. 242, 809 A.2d 243 (2002) ...............................................................................11

Prof'l Real Estate Investors v. Columbia Pictures Indus.,
    508 U.S. 49 (1993) .......................................................................................................10

Roebuck v. Drexel Univ.,
    852 F.2d 715 (3d Cir. 1988) .........................................................................................10

Smithkline Beecham Consumer Healthcare, L.P. v. Colgate-Palmolive Co.,
    No. 99-2533, 2000 U.S. Dist. LEXIS 7528 (E.D. Pa. June 2, 2000) ..............................9

Tarkett, Inc. v. Congoleum Corp.,
    156 F.R.D. 608 (E.D. Pa. 1994) ...................................................................................19

The F.B. Leopold Co., Inc. v. Roberts Filter Mfg. Co., Inc.,
    No. 92-2427, 1996 U.S. Dist. LEXIS 6630 (W.D. Pa. Feb. 6, 1996) .......................8, 19

Zenith Elecs. Corp. v. Exzec, Inc.,
    182 F.3d 1340 (Fed. Cir. 1999) ....................................................................................10

**STATUTES**

15 U.S.C. § 1117(a) ..............................................................................................1, 8, 12

35 U.S.C. § 285 ....................................................................................................1, 8, 11

# PRELIMINARY STATEMENT

The overwhelming evidence and the jury's verdict establish that Argentum Medical, LLC, Thomas Miller and Gregg Silver deliberately claimed patent protection upon existing wound care dressings produced through plaintiff Noble Biomaterials' ("Noble") proprietary technology, pursued patent infringement litigation against Noble and advised the market that Noble's SILVERSEAL® line of advanced wound care dressings infringe its patent rights for the wrongful purpose of preventing Noble from competing.  Defendants knew from prior adverse court decisions that the exclusive license upon which they based their right to enforce the Patent at issue was invalid and misled the Patent and Trademark Office into issuing the Patent.

The jury's verdict does not fully compensate Noble for the losses sustained as a result of defendants' wrongful conduct.  Noble was only able to fend off Argentum Medical's baseless infringement claims and establish defendants' liability only after extensive litigation spanning three years, resulting in over a million dollars in fees and costs.  That the jury's verdict does not provide complete compensation to Noble is evident from its inability to assess damages for the losses Noble sustained from defendants' pursuit of frivolous litigation.

The Court may provide complete relief to Noble under Section 1117(a) of the Lanham Act, and alternatively Section 285 of the Patent Law, by recognizing

the exceptional nature of this case and awarding Noble its fees and expenses as nontaxable costs. Noble is the unquestionable prevailing party in this litigation. The jury's verdict establishes that defendants knew their infringement claims were objectively baseless and that they acted intentionally and for the express purpose of causing Noble competitive harm. Indeed, defendants offered no facially valid defense of their conduct. Noble's Motion for Attorneys' Fees and Related Nontaxable Expenses should accordingly be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In late 2004, Noble introduced its SILVERSEAL® line of antimicrobial barrier wound dressings, consisting of single layer, silver coated nylon fabric, at a trade show. (Trs., 2/3/11, p. 199:10-25.) The nylon fabric comprising these dressings was coated with silver through Noble's proprietary autocatalytic plating process. For several years, Noble sold rolls of silver coated fabric to Argentum Medical for use in producing its SILVERLON brand of antimicrobial wound dressings. (Trs., 2/1/11 pp. 58:20-59:7.)

Defendants attended the trade show at which SILVERSEAL was introduced and informed attendees at that and subsequent trade shows that the SILVERSEAL infringed Argentum Medical's patent rights. (Trs., 2/1/11 p. 135:12-24; 2/3/11 p. 203:1-3.) They made these claims even though the application for the patent the defendants claim SILVERSEAL infringed was not filed until April 29, 2005. This

application was filed on behalf of Arthur Bartholomew Flick, M.D. as the purported inventor, claiming upon the structural elements of the SILVERSEAL product line. (P-3).

The subject matter claimed in the April 2005 Application was asserted to be an extension of multi-layer wound dressings consisting of silver metalized fibers Dr. Flick supposedly invented and claimed in Patent Number 6,087,549 (the "'549 Patent"). It was asserted that, as a result of the highly conductive nature of silver metalized fibers, the wound dressings claimed in the '549 Patent acted as a gradient to drive silver ions deeply into the tissue, causing cells to revert to an embryonic form that multiplies rapidly and rebuilds damaged tissue. This process supposedly accelerated wound healing. It was asserted that the single layer fabric dressing claimed in the April 2005 Application also accelerated wound healing and provided analgesia because of its highly conductive properties. As a result, this Application was claimed to be a continuation of Patent No. 7,214,847 (the "'847 Patent"), which was asserted to be a continuation-in-part of the '549 Patent. (P-1).

On June 12, 2007, the Patent and Trademark Office ("PTO") issued a patent upon the April 2005 application - - Patent Number 7,230,153 (the "'153 Patent"). On December 7, 2007, at Miller's and Silver's direction, Argentum Medical filed a patent infringement action against Noble and its principal distributor, Derma Sciences, Inc. ("Derma"), in the District Court for the Northern District of Illinois,

claiming that SILVERSEAL infringed the '153 Patent. (Am.Compl., Doc 45.)

Shortly after the '549 Patent was issued, Flick assigned it and all continuations and

continuations-in-part to Argentum International, which he formed to

commercialize these patents and market wound dressings. (Trs., 2/7/11, p. 159:1-

18.) Argentum Medical asserted that it could enforce the '153 Patent based upon a

document dated as of March 28, 2001 in the form of an exclusive license of the

'549 Patent and its continuation patent.  Flick purported to execute this document

on Argentum International's behalf (the "License Document").  (Trs., 2/7/11, p.

161:5-7.)

On March 5, 2008, Silver sent correspondence to, *inter alia*, fifteen

distributors of advanced wound dressings and wound care centers advising of the

infringement action Argentum Medical commenced against Noble and Derma. (P-

7A-7O.) The parties to which this letter was sent include three distributors who

supply 90% of the hospitals in the United States.  Silver stated that "Argentum

Medical manufactures Silverlon® antimicrobial wound, burn and surgical

dressings and strongly believes in the validity and enforceability of its intellectual

property rights." (P-7A-7O.) Silver also spoke with representatives of several of

the companies to which these letters were addressed, and claimed that

SILVERSEAL infringed the '153 Patent.  (P-7N, 7O.)

Noble moved to dismiss on the grounds of lack of personal jurisdiction and alternatively to transfer venue. Derma filed a separate Motion to Transfer Venue. It also tendered its defense to Noble in accordance with the terms of the distributor agreement. Noble accepted this tender. After briefing and jurisdictional discovery, the Northern District dismissed Noble on jurisdictional grounds and transferred the claims against Derma to this Court. In September 2008, Argentum Medical rejoined Noble. Noble denied all liability to Argentum Medical and asserted Counterclaims, including for unfair competition, product disparagement and violations of Section 43(a) of the Lanham Act.

Over the next approximately nine months, the parties engaged in extensive discovery. For instance, Noble counsel's undertook an extensive evaluation of the patents and the relevant art and reviewed the over 10,000 documents Argentum Medical produced. Seven depositions were taken across the country and extensive expert reports were produced. Noble's discovery and investigative efforts extended to analyzing the interrelationships between Flick, Argentum International, other "Argentum" entities and defendants. This analysis involved reviewing the pleadings, discovery and decisions in two lawsuits between those parties. At the conclusion of discovery, Noble filed a motion for summary judgment challenging Argentum's standing. In compliance with the controlling Scheduling Order, Noble also submitted extensive briefing on claim interpretation,

in support of its substantive motion for partial summary judgment and in
opposition to Argentum's motion for summary judgment of infringement.

The Court dismissed defendants' patent infringement claims for lack of
standing.  Argentum Medical, LLC v. Noble Biomaterials, No. 3:08-CV-1305 WL
2650493 (M.D. Pa. July 1, 2010).  It found that, prior to executing the License
Document, Flick had executed an assignment of the '549 Patent and its family of
patents to Argentum Research. (Id., *5.)  As a result, Argentum International did
not have any rights in those patents when the License Document was executed and
it was, therefore, invalid.  (Id.)  The Court rejected defendants' argument that they
cured this defect by having Flick execute a purported *nunc pro tunc* reassignment
from Argentum Research to Argentum International:

> *Nunc pro tunc* is defined as "[h]aving legal effect
> through *a court's inherent power." Black's Law
> Dictionary* 1174 (9th Ed. 2009) (emphasis added).  Parties
> to a contract, however, do not have the power to enter
> into *nunc pro tunc* agreements that operate to reach back
> in time and affect the rights of parties.  Allowing this
> would undermine fundamental principles of contract law
> and conveyance of property.  One could simply avoid an
> unfavorable contract by entering into a later contract
> *nunc pro tunc* with a third party that dated back to some
> time before the unfavorable contract was entered into,
> thereby stripping the original contract of its legal force.
> Moreover, applying this doctrine to the transfer of
> property would leave transactions unsettled and lacking
> in finality.  Such a result is unworkable.
>
> This Court see[s] no reason why such an
> agreement would be valid, and Plaintiff has not pointed
> to any case that has allowed *nunc pro tunc* conveyances,
> assignments, or transfers of real or intellectual property.

(Id., *5.)

Argentum Medical moved for reconsideration, purporting to cite several cases recognizing the validity of *nunc pro tunc* assignments. Rejecting the "increasingly convoluted logic of Argentum's claims," the Court denied reconsideration on the basis that none of the cases Argentum cited established that the execution of a *nunc pro tunc* would revive an invalid license. <u>Argentum Medical, LLC v. Noble Biomaterials</u>, No. 3:08-CV-1305 WL 3749274 (M.D.Pa. September 21, 2010).

During the pendency of this proceeding, a third party sought reexamination of the '153 Patent before the PTO. The PTO granted this request for reexamination and rejected all claims made in the version of the '153 Patent upon which Argentum based its infringement claim. (P-4.) Argentum did not challenge this determination. Although it persuaded the PTO to reissue the Patent, it did so only after the '153 Patent was substantially amended.

This case proceeded to a jury trial upon Noble's counterclaims. The jury entered a verdict in Noble's favor and against each defendant upon Noble's Lanham and product disparagement claims and against Silver upon Noble's unfair competition claim. The jury awarded Noble one million dollars in compensatory damages from Argentum, one million dollars in punitive damages against Miller and $1,250,000 in punitive damages against Gregg Silver.

7

As the unambiguous "prevailing party" upon all claims, Noble now seeks an award of attorneys' fees in the approximate existing amount of $950,000 and the $55,000 in fees it reimbursed Derma, together with the fees it may hereinafter incur.[1]

## STATEMENT OF THE QUESTIONS INVOLVED

1.   Whether Noble should be awarded all of the fees and costs it incurred on the grounds that it is an exceptional case under the Lanham Act?

*Suggested answer: Yes.*

2.   Whether Noble should alternatively be awarded the amount of the attorneys' fees and costs it incurred through the Court's denial of Argentum Medical's Motion for Reconsideration of the dismissal of the patent claims?

*Suggested answer: Yes.*

## ARGUMENT

Under both the Lanham and Patent Acts, a court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a); 35 U.S.C. § 285; see also Dodge Regupol, Inc. v. RB Rubber Prods., Inc., 585 F. Supp. 2d 645, 655 (M.D. Pa. Nov. 12, 2008) (court retains jurisdiction to determine a § 285 motion even after claims regarding the patent are no longer

---

[1] In accordance with common practice, should the Court grant this Motion, at the Court's direction Noble will submit documentation to support the claimed amounts. The F.B. Leopold Co., Inc. v. Roberts Filter Mfg. Co., Inc., No. 92-2427, 1996 U.S. Dist. LEXIS 6630, at *7 (W.D. Pa. Feb. 6, 1996); Preemption Devices, Inc. v. Minn. Mining & Mfg. Co., No. 80-0268, 1986 U.S. Dist. LEXIS 28564, at *14 (E.D. Pa. Mar. 5, 1986).

before the court). In applying these provisions, courts have employed a similar

two-part test, first determining whether the losing party's conduct is sufficiently

culpable to justify an award of attorneys' fees, and then exercising their discretion

as to whether to award of fees and costs. Green v. Fornario, 486 F.3d 100, 103 (3d

Cir. 2007) (Lanham Act); J.P. Stevens Dodge-Regupol, Inc. v. RB Rubber Prods.,

Inc., No. 3:06-cv-236, 2010 U.S. Dist. LEXIS 31838, at *12-13 (M.D. Pa. Mar. 31,

2010) (quoting J.P. Stevens Co., Inc. v. Lex Tex Ltd., Inc., 822 F.2d 1047, 1050

(Fed. Cir. 1987)) (Patent Act).

    "[E]xceptional circumstances" exist whenever a party's conduct ranges

from something in excess of simple negligence – gross negligence – to something

short of fraud. Preemption Devices, Inc. v. Minn. Mining & Mfg. Co., No. 80-

0268, 1986 U.S. Dist. LEXIS 28564, at *6-7 (E.D. Pa. Mar. 5, 1986) (citing Mach.

Corp. of Am. v. Gullfiber AB, 774 F.2d 467, 473 (Fed. Cir. 1985)); Smithkline

Beecham Consumer Healthcare, L.P. v. Colgate-Palmolive Co., No. 99-2533, 2000

U.S. Dist. LEXIS 7528, at *4-5 (E.D. Pa. June 2, 2000) (citation omitted) (losing

party's conduct need not amount to fraud). Demonstrating gross negligence

requires evidence of "willful, wanton, or reckless" misconduct, or of an "utter lack

of care." Id. What constitutes culpable conduct is elastic and "may vary

depending on the circumstances of a particular case." Am. Eagle Outfitters, Inc. v.

Lyle & Scott Ltd., No. 06-0607, 2009 U.S. Dist. LEXIS 86057, at *8 (W.D. Pa. Sept. 21, 2009) (citation omitted).

It is respectfully submitted that the jury's verdict conclusively establishes willful, wanton and reckless misconduct rendering this case exceptional. The Seventh Amendment right to a jury trial and principles of *res judicata* bind a court to a jury's findings where common issues to be resolved separately by the jury and court. Roebuck v. Drexel Univ., 852 F.2d 715, 737-38 (3d Cir. 1988); see also, Andrews v. City of Philadelphia, 895 F.2d 1469, 1483 (3d Cir. 1990) ("in all issues which are common to a claim tried simultaneously to the bench and to a jury, the court is bound by the jury's findings"). The jury was required to the find the elements necessary to establish this action as "exceptional" under the Lanham and Patent Acts in order to return a verdict upon Noble's Lanham Act and state law claims. Where unfair competition claims are based upon unsubstantiated infringement claims or public claims of infringement, a plaintiff must establish that they were without reasonable basis, or that the defendant abused the patent system, such as by engaging in inequitable conduct before the PTO. Prof'l Real Estate Investors v. Columbia Pictures Indus., 508 U.S. 49, 62-64 (1993); Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1353 (Fed. Cir. 1999). The Federal Circuit recently held that the limitations Prof'l Real Estate Investors imposed upon unfair competition claims based upon the wrongful exercise of intellectual property rights

extend to requests for attorneys' fees under § 285. iLor, LLC v. Google, Inc., No. 2010-1117, 1172, 2011 U.S. Dist. LEXIS 516, at *3-4 (Fed. Cir. Jan. 11, 2011).

Additionally, an essential element of a product disparagement claim is that the defendant either knew that the challenged statement was false or acted in reckless disregard of its truth or falsity. Pro Golf Mfg. v. Tribune Review Newspaper Co., 570 Pa. 242, 246, 809 A.2d 243, 246 (2002). The jury furthermore could not have imposed punitive damage upon Miller and Silver without determining that they acted with, at least, a wanton disregard to Noble's rights. Phillips v. Cricket Lighters, 584 Pa. 179, 188, 883 A.2d 439, 445-46 (2005).

Moreover, the Court's dismissal of Argentum Medical's patent infringement claims conclusively establishes that it lacked standing. Further, the PTO's rejection of the claims made in the '153 Patent as sought to be enforced against Noble during reexamination is binding and demonstrates that the Patent was invalid. As such, the primary issues addressed at trial were whether defendants nevertheless reasonably believed that Argentum Medical had standing to enforce the '153 Patent or that the Patent was valid or engaged in inequitable conduct before the PTO. In returning a verdict for Noble, the jury resolved these issues against defendants, presumably finding their minimal justification defenses lacked

credibility.  The Court could not conclude other than that this action is exceptional without rejecting credibility determinations that are the sole province of the jury.

The Court should accordingly find this action exceptional based upon the jury's verdict.  However, even should it review the record independently, there is compelling evidence of defendants' willful, wanton or reckless misconduct, and utter lack of care.

**A.     Noble Should Be Awarded All of the Attorneys' Fees and Expenses It Incurred in this Litigation Pursuant to Section 1117(a) of the Lanham Act**

Viewing the evidence in its totality, defendants publicized claims that SILVERSEAL infringed manufactured patent rights knowing that they, in any event, had no right to enforce.  Defendants began their infringement claims as soon as Noble introduced the SILVERSEAL product line and before the application for the '153 Patent was even filed.  They caused a patent application to be filed on wound care dressings that had been on the market for years and that were produced with Noble's proprietary process.  Defendants' purpose was to intimidate distributors into declining to handle SILVERSEAL out of concern that Argentum Medical would assert infringement claims against them, thereby choking off SILVERSEAL's access to the market before it could ever gain a foothold.

**1.    Defendants Could Not Have Reasonably Believed That Argentum Medical Had Standing to Enforce the '153 Patent**

A case is exceptional where a party filed and maintained an infringement

suit it knew, or on reasonable investigation should have known, was baseless.

Eltech Sys. Corp. v. PPG Indus., Inc., 903 F.2d 805, 810 (Fed. Cir. 1990).  This

standard should apply under the Lanham Act as well because the crux of Noble's

Section 43(a) claims was that defendants advised the market of its infringement

complaint and otherwise claimed that SILVERSEAL infringes Argentum's patent

rights even though there was no merit to these assertions.  To be objectively

baseless, the infringement allegations must be such that no reasonable litigant

could reasonably expect success on the merits.  iLor, LLC v. Google, Inc., supra, at

*14.  That a party's infringement claims fail to survive summary judgment tends to

establish that its claims were frivolous.  See generally Arlington Indus., Inc. v.

Bridgeport Fittings, Inc., No. 3:01-cv-0485, at *5-6 (M.D. Pa. Mar. 10, 2010).

Silver and Miller knew that Flick executed an assignment of Argentum

International's interest in the '549 family of patents to Argentum Research before

the License Document was executed because that assignment was the subject of

litigation various members of Argentum International commenced against Flick.

Argentum International, Inc. v. Woods, 634 S.E.2d 195, 199 (Ga. Ct. App.  2006).

Miller was a defendant in the Woods litigation and Silver monitored that case.

(Trs. 2/3/11; pp. 228:15-229:7)  Even a layperson would recognize that the License

Document would be invalid if Argentum International transferred its rights in the patents before it was executed. Defendants do not suggest otherwise. Further, Flick's execution of a reassignment of the '549 family of patents to Argentum International shows that defendants knew there was an issue.

As is set forth previously, the Court found that defendants provided no basis whatsoever in responding to Noble's Motion for Summary to conclude that the License Document sprung to life when a *nunc pro tunc* assignment of the patents from Argentum Research to Argentum International was executed in February 2005. Defendants also did not offer any evidence at trial that they actually had a different understanding. To the contrary, defendants tendered the testimony of Charles Vordran, who prepared the *nunc pro tunc* assignment. When asked what he advised his clients about that document, Vordran responded he told them that "Argentum International retained title in the patent." (Trs., 2/9/11, p. 64:25.) He said nothing about the validity of the License Document.

In any event, the License Document was clearly invalid. Flick lacked authority to execute this document as he testified that he served only as Argentum International's Medical Director and the Company's Board of Managers' did not vote to authorize its execution. (Trs., 2/7/11, pp. 159:22-162:16.) The evidence is also overwhelming that Flick executed the assignments in question and the License Document to misappropriate Argentum International's assets after he became

embroiled in a dispute with the <u>Woods</u> plaintiffs and Michael Dierkes.  The

judgment in <u>Woods</u> that Miller and Flick engaged in fraudulent conduct,

particularly after it was affirmed, gave unmistakable notice to defendants that Flick

did not have the right to transfer Argentum International's assets.  Despite the

findings of a jury and two courts, defendants still attempted to assert those rights

against Noble.

Moreover, the defendants in the <u>Woods</u> litigation agreed to the entry of an

injunction prohibiting the transfer, encumbrance or disposition of Argentum

International's patent rights.  (P-76, pp. 22-23)  As reflected in a contemporaneous

memorandum defendants and Flick prepared, this Order stood in the way of their

scheme to misappropriate the SILVERLON product line and Argentum

International's rights in the '549 Patent. (P-34, p. 1)  Even though they recognized

that Argentum's "contact dressings, covered under the '026 patent [referring to the

'549 Patent by its application number] and CIP are covered by the injunction,"

they nevertheless agreed that Flick would execute the License Document.  (<u>Id</u>.)  A

conveyance instrument executed in violation of a federal court order cannot be

enforced.  <u>Diekelman v. U.S.</u>, 8 Ct.Cl. 371 (1872) ("[T]his contract, in violation of

a prohibitory order, was not valid, and could not have been enforced."), <u>rev'd on

other grounds</u>, 92 U.S. 520 (1875).  Defendants pursued infringement claims

against Noble even though a discovery order was entered against them that

recognized that Flick's subsequent transfers of these assets constituted *prima facie*

evidence sufficient to invoke the crime fraud exception to the attorney client

privilege.  (P-45, p. 7.)

### 2.   The '153 Patent Would Not Have Been Issued Except for Argentum Medical's and Silver's Inequitable Conduct Before the PTO

Filing a patent application claiming upon another party's product far exceeds

the pale of any legitimate rights conveyed under the Patent Act.  Silver knew, as

does even most laypersons, that patent rights may only be claimed upon a new

invention.  (Trs., 2/3/11, p. 156:19-22)  Yet, he directed that the application for the

'153 Patent claim upon Noble's products.  (Id., pp. 156:4-157:22)

Defendants argued that they were justified in filing a patent application

covering Noble's existing products because they were entitled to the priority date

of the '549 Patent, or at least the '847 Patent.  They based this position upon their

contention that the '153 is a continuation of the 847 Patent, which is a

continuation-in-part of the '549.  However, these designations when a patent is

issued do not create a presumption that it is entitled to the priority date for an

earlier patent in the absence of an express priority determination by the PTO.

PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1305 (Fed Cir. 2008).  A

party claiming an earlier priority date for a purported continuation or continuation-

in-part patent bears the burden of demonstrating that the prior application discloses

the entire invention claimed in the patent. *Id.*, 1305-06. Defendants made no

effort to meet this burden. Strikingly, when asked on direct about the priority date

for the '153 Patent, Vordran testified that:

> A. The earliest effective priority date is September 22,
> 1997, **provided that all of the elements that are in the
> claims are found in the specification filed on
> September 22, 1997.**
>
> Q. And otherwise, what priority date would it be if not
> found?
>
> A. If all of the elements are not found in that first one, the
> earliest effective priority date would be July 11, 2000,
> **provided all of the elements of the claim are found in
> the specification filed on July 11, 2000.**

(Trs., 2/9/11, pp. 67:21-68-5) (emphasis added).  Vordran merely restated the

general principles governing the determination of a priority, but did not even

attempt to identify where all of the elements claimed in the '153 Patent were found

in either the '549 or '847 Patents.

Even if the '153 Patent were entitled to the priority date of the '549 Patent,

*i.e.*, September 22, 1997, defendants were able to persuade the PTO to issue the

'153 Patent by misstating the substance of prior art.  During examination,

Argentum Medical argued that the wound dressings claimed in the application for

the '153 Patent were distinguishable over the prior art because highly conductive

dressings were not disclosed therein.  The PTO rejected these claims based on a

patent issued to Stoddard claiming on a conductive tape with a resistance of 80

Ohms/in$^2$. (P-97, p. 3.)   Argentum Medical, with Silver's approval (P-101),

amended the application to claim on a wound dressing with a resistance level of 10

Ohms/in$^2$ to .001 Ohms/in$^2$, representing that the Stoddard patent did not claim

upon such a device.  (P-102, p. 6.)  This assertion was misleading, at best, because

defendants knew that there was a 1985 article by Andrew Marino reported upon

research with single layer, nylon fabric material coated with silver through the

autocatalytic plating process.  (P-47.)  In Table II, the Marino article reports that

the resistance range of these fabrics was between .8 to 1.6 Ohms/in$^2$ - - well within

the resistance levels claimed in the Patent.  While Marino had been disclosed to the

PTO, Argentum Medical never identified that this article referenced silver coated

single layer fabric within the range of the amended claims.  When Marino was

brought to the PTO's attention during reexamination, it rejected all claims in the

'153 Patent.  (P-4.)

Argentum Medical also failed to disclose a key article authored by Chi-Sing

Chu in 1988 reporting upon research as to the antimicrobial characteristics of

single layer nylon fabric wound dressings coated with silver through the

autocatalytic plating process.  (P-52.)  It was reported that rats treated with silver

nylon fabric wound dressings (without applied current) showed "improved survival

when compared to the silver cathode group . . . and to all" control subjects.  (Id., p,

1489.)  This article demonstrates the use of the very wound dressings covered by

the claims of the '153 Patent years before the application for even the '549 Patent was filed.

**B.    Noble Should At Least Recover Its Fees and Costs Through the Denial of Argentum Medical's Motion for Consideration under the Patent Act**

Even if the conduct giving rise to Noble's Lanham claims does not render the entire case exceptional, Noble should recover its fees and costs (including the fees reimbursed to Derma) through the denial of Argentum Medical's Motion for Reconsideration of the dismissal of the infringement claims.  The patent infringement claims were objectively and subjectively baseless.  The evidence further demonstrates that the version of the '153 Patent that was the subject of the infringement action would never have been issued but for defendants' inequitable conduct.  Further, the compensatory damages the jury awarded Noble does not compensate it for the substantial fees and expenses it incurred.

**C.    The Court Should Exercise Its Discretion to Award Fees and Costs**

Courts have exercised their discretion to award attorneys' fees to accused infringers imply upon a determination that the case was "exceptional."  See, e.g., Tarkett, Inc. v. Congoleum Corp., 156 F.R.D. 608, 615 (E.D. Pa. 1994); Preemption Devices, Inc. v. Minn. Mining & Mfg. Co., No. 80-0268, 1986 U.S. Dist. LEXIS 28564, at *13-14 (E.D. Pa. Mar. 5, 1986); The F.B. Leopold Co., Inc. v. Roberts Filter Mfg. Co., Inc., No. 92-2427, 1996 U.S. Dist. LEXIS 6630, at *5

(W.D. Pa. Feb. 6, 1996).  Should a court choose to consider other factors, it may weigh culpability, closeness of the questions, and litigation behavior.  <u>Nilssen v. Osram Sylvania, Inc.</u>, 528 F.3d 1352, 1359 (Fed. Cir. 2008).

Defendants' conduct was far from defensible and they acted for the specific purpose of preventing Noble from competing.  Moreover, Miller and Flick directly participated in the scheme to misappropriate Argentum International's assets and Argentum Medical was formed to exploit those assets.  While this conduct was not initially directed at Noble, it ultimately was extended to Noble when defendants attempted to assert the rights purportedly obtained from Argentum International against it.  Lastly, as Noble was required to defend a patent infringement litigation and pursue affirmative claims for relief, the compensatory damages awarded will do nothing but offset Noble's fees and expenses.

Noble should furthermore be awarded the attorneys' fees and costs it reimbursed Derma because it did so in accordance with its contractual obligations. Further, if Noble had not reimbursed Derma, it could have moved for an award of its fees and costs.  It would exalt form over substance to deny Noble reimbursement for those fees under these circumstances.

## **CONCLUSION**

Noble's Motion for an Award of Fees should be granted.

Respectfully submitted,

COZEN O'CONNOR

BY:   /s/ Robert W. Hayes
Robert W. Hayes, Esq. (33099)
1900 Market Street
Philadelphia, PA 19103
(215) 665-2095
rhayes@cozen.com
*Attorneys for Plaintiff,*
*Noble Biomaterials*

Dated:  March 4, 2011

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOBLE BIOMATERIALS, | : | |
| | : | |
| Plaintiff, | : | No. 3:08-cv-01305 |
| | : | |
| v. | : | |
| | : | HONORABLE A. RICHARD |
| | : | CAPUTO |
| ARGENTUM MEDICAL, LLC, | : | |
| THOMAS MILLER AND | : | |
| GREGG SILVER | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATION OF COMPLIANCE

I certify that the foregoing Brief in Support of Motion for Attorneys' Fees and Related Nontaxable Expenses Pursuant to Federal Rule of Civil Procedure 54(d)(2) complies with the word-count limit set forth in Local Rule 7.8(b)(2) because it contains less than 5,000 words. In making this certification, I rely upon the word count feature of the word-processing system used to prepare the brief.

BY: /s/ Robert W. Hayes
Robert W. Hayes, Esq. (33099)
1900 Market Street
Philadelphia, PA 19103
(215) 665-2095
rhayes@cozen.com
*Attorneys for Plaintiff,*
*Noble Biomaterials*

Dated: March 4, 2011

## CERTIFICATE OF SERVICE

I certify that on March 4, 2011, I caused the foregoing PLAINTIFF'S

MOTION FOR ATTORNEYS' FEES AND RELATED NONTAXABLE

EXPENSES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE

54(D)(2), and Brief in Support thereof, to be served upon all counsel of record via

the Court's ECF filing system.

/s/ Robert W. Hayes