**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NOBLE BIOMATERIALS,<br><br>Plaintiff,<br><br>v.<br><br>ARGENTUM MEDICAL, LLC, THOMAS MILLER and GREGG SILVER,<br><br>Defendants. | CIVIL ACTION NO. 3:08-CV-1305<br><br>(JUDGE CAPUTO) |

## **MEMORANDUM**

Presently before the Court are Counterclaim Defendants' Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial. Because there was sufficient evidence from which the jury could find the Defendants liable, the Court made no error affecting the Defendants' substantial rights, and the jury awards do not shock the conscience, both motions will be denied.

### I. Background

**A. SILVERLON and SILVERSEAL**

Counterclaim Plaintiffs Noble Biomaterials is a company that produces silver-coated nylon fabric using an autocatalytic electroless silver process. Trial Tr. vol. 2, 24:21-25:10, Feb. 2, 2011, ECF No. 283. In approximately 1989, Noble became aware that silver-coated nylon fabric bandages were effective at fighting bacteria in wounds. Trial Tr. vol. 2, 36:25-37:16. It then began selling products that capitalized on the

bacteria-fighting qualities of silver.  Trial Tr. vol. 2, 51:9-15.  Among its customers was Argentum International, a company specializing in wound care products.  Trial Tr. 58:16-59:7.

Argentum International sold single-layer wound dressings of coated silver under the name SILVERLON.  Trial Tr. vol. 4, 87:21-88:9, Feb. 3, 2011, ECF No. 284.  The SILVERLON dressings used silver fabric purchased from Noble, coated using the autocatalytic electroless plating process.  Trial Tr. vol. 4, 147:6-19.  The use of the autocatalytic electroless plating process has an advantage because the silver is coated uniformly, which makes the dressing more effective as an antimicrobial.  Trial Tr. vol. 3, 147:20-148:4.  Noble later sold the same products to an entity formed out of Argentum International, Defendant Argentum Medical.  Trial Tr. vol. 2, 58:20-59:7; Trial Tr. vol. 4, 89:25-90:4.

In 2004, Noble began developing its own wound contact dressings using its silver-coating technology, calling this line of products "SILVERSEAL."  Trial Tr. vol. 4, 16:4-14:15.  Noble first publicly introduced the SILVERSEAL brand at a trade show in October 2004.  Trial Tr. vol. 4, 199:11-200:7.  At that show, Defendant Thomas Miller, President of Argentum Medical, told many attendees that the SILVERSEAL product was "knocking off" SILVERLON.  Trial Tr. vol. 4, 199:10-25.  One attendee who heard this explained she interpreted it to mean that SILVERSEAL was infringing upon SILVERLON.  Trial Tr. vol. 4, 199:10-25.  Defendants repeated similar claims at successive trade shows.  Trial Tr. vol. 4 205:20-206:4, 207:17-25, 208:21-209:1, 211:1-3, 211:22-25, 212:16-20, 213:17-22, 215:14-18, 219:11-22; Trial Tr. vol. 5, 226:3-227:1, Feb. 4, 2011, ECF No. 285; Trial Tr. vol. 6 4:1-24, Feb. 7, 2011, ECF No. 296.

After learning that Noble had introduced its SILVERSEAL brand, Defendant Gregg Silver, the Chief Executive Officer of Argentum Medical, ordered the filing of a patent application. Trial Tr. vol. 4, 251:20-252:12. The application, filed on April 29, 2005, was for a single layer wound dressing with wound-healing capabilities, and it named as inventor Dr. Bart Flick. Trial Trial Tr. vol 4, 254:7-10; Tr. vol. 5, 7:2-12. The application was filed as a continuation on a previous patent that traced back to Patent Number 6,087,549 (the "'549 patent"). Trial Tr. vol. 4, 253:10-15. The Patent and Trademark Office granted the application and issued Patent Number 7,230,153 (the "'153 patent") on June 12, 2007.

**B. Patent Rights Transfers and Georgia Litigation**

The '153 patent names A. Bart Flick as its inventor and Argentum International as the assignee. *Argentum Med., LLC v. Noble Biomaterials*, No. 08-1305, 2010 WL 2650493, at *1 (M.D. Pa. 2010). In November 2000, Flick signed an agreement conveying International's rights in the patent to Argentum Research. *Id*, at *5; *Argentum Intern., LLC v. Woods*, 634 S.E.2d 195, 199 (Ga. App. 2006). Then in February 2011, Flick made another assignment, this time from International to Argentum Medical–despite the fact that he had already transferred International's rights in the patent to Research. *See Woods*, 634 S.E.2d at 199. To remedy this situation, International and Research entered into a *nunc pro tunc* agreement that was meant to date back and transfer the rights in the '153 patent back to Argentum International. *Id.*

Flick, Miller, and International would eventually be found liable in a Georgia state court action for fraud and conspiracy, based on the fact that they misrepresented

3

Argentum International's patent rights ownership to investors. *Woods*, 634 S.E.2d 195 (affirming lower court).

**C. Litigation**

On December 7, 2007, Argentum Medical filed a patent infringement suit against Noble and its principal distributor, Derma Sciences, Inc. (who tendered its defense to Noble based on their distribution agreement). The patent infringement claim was dismissed for lack of standing on the grounds that Argentum Medical did not at any time have legal title to the '153 patent. *Noble Biomaterials*, 2010 WL 2650493, at *5. It was determined that Argentum International did not have rights to the patent at the time it transferred it to Argentum Medical, and the *nunc pro tunc* agreement was invalid. *Id.*

The case proceeded to a jury trial upon Counterclaim Plaintiff Noble's Lanham Act, product disparagement, and unfair competition counterclaims against Counterclaim Defendants Argentum, Thomas Miller, and Gregg Silver. During the trial, Defendants moved for judgment as a matter of law. The motion was denied, and the case was decided by a jury. The jury found that all Defendants violated the Lanham Act and engaged in product disparagement, and it found that Silver engaged in unfair competition. The jury awarded Noble $1 million in compensatory damages, which it assessed against Argentum. It also awarded Noble $2.25 million in punitive damages, which it assessed against Miller in the amount of $1 million and Silver in the amount of $1.25 million.

Defendants filed the instant motions on March 10, 2011. The motions have been fully briefed and are ripe for disposition.

## II. Discussion

**A. Judgment as a Matter of Law**

Defendants seek judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b).  Under Rule 50(a), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the court may grant judgment as a matter of law on that issue.  Rule 50(b) allows a party whose 50(a) motion has been denied to renew the motion after trial.  It also gives a party the option to include a joint request for a new trial under Rule 59.

**1. Standard of Review**

A court ruling on a Rule 50 motion must determine "whether, viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable interest, there is insufficient evidence from which a jury reasonably could find liability."  *W.V. Realty Inc. V. N. Ins. Co. of N.Y.*, 334 F.3d 306, 311 (3d Cir. 2003). Motions for judgment as a matter of law should be granted "sparingly."  *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 383 (3d Cir. 2004). The remedy is appropriate only where "'the record is critically deficient of a minimum quantum of evidence' in support of the record."  *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003).  "The question is not whether there is literally *no evidence* supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict."  *Id.*

### 2. Waiver

A defendant who fails in his Rule 50(a) motion to raise an issue "with sufficient specificity to put the plaintiffs on notice" waives the right to raise the issue on a later renewed motion under Rule 50(b). *Williams v. Runyon*, 130 F.3d 568, 571-72 (3d Cir. 1997) (citing 90 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2533 (1995); *Orlando v. Billcon Int'l Inc.*, 822 F.2d 1294, 1297-98 (3d Cir. 1987); *Perdoni Bros., Inc. v. Concrete Sys., Inc.*, 35 F.3d 1, 3 (1st Cir. 1994)). Defendants here raise arguments in their renewed motion for judgment as a matter of law pursuant to Rule 50(b) that they did not raise in their original motion for judgment as a matter of law. First, they argue that Noble cannot prove bad faith because Defendants did not know their statements made at trade shows were false. Second, they object to the awarding of punitive damages. Third, they argue that the jury's verdict necessarily implies that the Defendants did not act in bad faith  Because they did not raise these issues with sufficient specificity to put Noble on notice during their first motion, Defendants have waived the right to assert these arguments in their renewed motion.

### 3. Bad Faith

Defendants' remaining argument in favor of judgment as a matter of law is that Noble failed to prove bad faith on the part of the Defendants, and thus their Lanham Act claim fails. The Federal Circuit has established that unless bad faith is shown, federal patent laws preempt state tort or federal Lanham Act claims against a patent holder that are based on enforcing a patent in the marketplace. *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353-54 (Fed. Cir. 1999).

The parties first dispute whether Noble is required to establish bad faith in this case. Noble argues that because Defendants were not actually the patent owners, they had no right to enforce that would necessitate the protection of a bad faith requirement. Although the Federal Circuit has not directly addressed the issue of a bad faith requirement for non-patentholders, Noble notes that in discussing the bad faith requirement, the Federal Circuit consistently states that it applies to patentholders. *See, e.g.*, *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1369 (Fed. Cir. 2008) ("State tort claims against a *patent holder* . . . are 'preempted' by federal patent laws, unless the claimant can show that the *patent holder* acted in "bad faith.") (emphasis added); *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007) ("[A] *patentee* has a right to inform potential infringers of a patent and potentially infringing activity unless the communication is made in bad faith.") (emphasis added); *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999) ("[A] *patentee's* statements regarding its patent rights are conditionally privileged under the patent laws.") (emphasis added); *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) ("Federal precedent is that communications to possible infringers concerning patent rights is not improper if the *patentholder* has a good faith belief in the accuracy of the communication.") (emphasis added). The use of this language comports with the purpose of the bad faith requirement, which exists because "a patent owner has the right to . . . enforce its patent, and that includes threatening alleged infringers with suit." *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1370 (Fed. Cir. 2002) (quoting *Concrete Unlimited, Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1538 (Fed. Cir. 1985)). Defendants were not patent owners, licensees, or agents speaking on behalf of the patentholder. Therefore,

7

they had no right to enforce the patent, and there is no need to protect them with a bad faith requirement.

Defendants cite to two cases where a bad faith requirement was applied to non-patentee, but those cases are distinguishable because both involved unfair competition claims against parties who at some point were owners of the patent at issue. First, in *Golan v. Pingel Enterprise, Inc.*, the bad faith requirement was applied to a former patent holder whose patent had expired prior to his alleged acts of unfair competition. 310 F.3d 1360, 1370-71 (Fed. Cir. 2002). Next, in *Scosche Industries, Inc. v. Visor Gear Inc.*, the bad faith requirement was applied to a patent holder whose first of three alleged acts of unfair competition took place after he had applied for his patent but prior to the PTO's issuing of the patent. 121 F.3d 675, 676 (Fed. Cir. 1997). These cases do not serve to establish that the bad faith requirement must be applied to defendants like those in this case, who never at any point owned the rights to the patent at issue.

Defendants also argue that the bad faith requirement must still apply because §287(a) of the Patent Act expressly authorizes non-patentees to make give notice that a product is patented. *See* 35 U.S.C. § 287. But § 287(a) allows non-patentees to fix the word "patent" onto a patented article of its packaging–nowhere does it state that non-patentees are privileged to make assertions about alleged infringements. *Id.* Section 287(a) of the statute is thus irrelevant to the issue at hand. Based on Federal Circuit precedent and the purpose of the bad faith requirement, I hold that the bad faith requirement does not apply in this case.

Even if there was a bad faith requirement in this case, the record contains sufficient evidence from which a jury could find bad faith. "Bad faith includes separate

8

objective and subjective components." *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008) (citing *Mikohn Gaming*, 165 F.3d 891, 897 (Fed. Cir. 1998)).  The objective component requires a showing that the infringment claims were "objectively baseless," meaning that "no reasonable litigant could reasonably expect success on the merits."  *Id.* (internal quotations omitted) (quoting *GP Indus., Inc.*, 500 F.3d at 1374).  Here, because Defendants did not have the rights to enforce the patent, its infringement claims were objectively baseless.  Additionally, the jury received sufficient evidence from which they could reasonably conclude that the Defendants believed that the '153 patent was unenforceable and invalid.  Noble presented evidence that Defendants knew Argentum International did not own the rights to the '153 patent and thus could not assign it to them..  Noble also presented evidence that Silver and Miller did not reasonably believe that the subject matter of the '153 patent was patentable because it had been marketed for years and that they engaged in fraud against the Patent and Trademark Office.  This evidence satisfies the subjective component of bad faith.  Therefore, viewing the evidence in the light most favorable to Noble, there was sufficient evidence to overcome judgment as a matter of law in favor of the Defendants.

**C. New Trial**

Defendants have alternatively moved for a new trial under Rule 59.  Rule 59 states that a court may grant a new trial on some or all of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).

### 1. Standard of Review

Rule 59 motions are granted entirely at the discretion of the district court.  *Blancha*

*v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992).  The scope of that discretion, however, is dependent on the basis of the motion.  *See Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1992).  When the motion is against the weight of the evidence, the court's discretion is narrow: it may only grant the motion "when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience."  *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991)  (citing *EEOC v. Del. Dep't of Health and Soc. Servs.*, 865 F.2d 1408, 1413 (3d Cir. 1989)).  But the court's discretion is far more broad "when the reason for interfering with the jury verdict is a ruling on a matter that initially rested within the discretion of the court, *e.g.* evidentiary rulings or prejudicial statements made by counsel."  *Klein*, 992 F.2d at 1289-90 (internal citations omitted).  These cases involve a two-part inquiry, asking: (1) whether an error was committed; and (2) whether that error affects a party's substantial rights.  *See* Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); *see also, e.g.*, *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995); *Bhaya v. Westinghouse Elec. Corp.*, 709 F. Supp. 600, 601-602 (E.D. Pa. 1989). In the instant case, Defendants' Rule 59 motion is based on alleged errors by the court and prejudicial statements made by Noble's counsel, and thus the latter standard applies.

If a party fails to object to errors at trial, the right to object in post-trial motions is waived.  *See, e.g.*, *Waldorf v. Shuta*, 142 F.3d 601, 629 (3d Cir. 1998).  Where an objection has been waived, a court will review it only for plain error.  *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 136 (3d Cir. 1997); *ID Sec. Sys. Can., Inc. v. Checkpoint Sys., Inc.*, 249 F. Supp. 2d 622, 671 (E.D. Pa. 2003).  "Plain errors are those

errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 881 (3d Cir. 1991) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

### 2. Jury Inflammation

Defendants first argue that Noble's closing argument was prejudicial to the point of improperly inflaming the jury. Defendants object in particular to Noble's alleged "invitations" to the jury to punish Defendants for the fraudulent transfer at issue in the Georgia litigation. Although Defendants objected in their motions *in limine* to the introduction of evidence regarding the findings of fraud made in the Georgia litigation, they did not object at any point during Noble's closing argument. The introduction of the evidence is separate and distinct from the alleged use of prejudicial language during the closing argument (and Defendants' objections to the introduction of that evidence will be addressed below), and thus the objections in the motions *in limine* do not encompass the necessary objection during the closing. Therefore, Defendants have waived their objection and the plain error standard will be applied.

Nothing said by Noble's counsel during the closing argument affected the fairness, integrity, or reputation of the proceedings. Defendants object to statements such as, "[Defendants] didn't learn their lesson from these prior litigations. They just continued to abuse the process." *See* Trial Tr. vol. 8, 199:8-10, Feb. 9, 2011, ECF No. 298. These statements are far less prejudicial or inflammatory than those in the cases cited by Defendants. *See Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 276-78 (5th Cir. 1998) (reversing where counsel ignored judge's rulings by appealing to local bias and asked jury to put themselves in victim's place by imagining how it would feel to have a

knife in their side); *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 210 (3d Cir. 1992) (reversing where counsel gave personal opinion on case, insulted opposing counsel and implied they lied about evidence in order to receive legal fees, and introduced extrinsic evidence); *Commil USA, LLC v. Cisco Sys., Inc.*, No. 2:07-CV-341, slip. op. at 3-4 (E.D. Tex. Dec. 29, 2010) (granting motion for new trial where counsel made references to Jewish witness not eating pork and discussed trial of Jesus as way to align Christian jurors against Jewish plaintiffs).  Further, Defendants' characterization of these statements is incorrect–Noble was not asking the jury to punish Defendants for the prior fraud, but rather reminding the jury that Defendants had attempted to enforce a license against Noble that Flick did not have the right to transfer.  Therefore, Noble's statements do not constitute plain error.

### 3. Admission of Georgia Litigation Evidence

Defendants also claim that it was an error to admit evidence regarding the findings of fraud from the Georgia litigation, arguing that it was both prejudicial and irrelevant. The evidence of the Georgia litigation was relevant, however, to the Lanham Act and product disparagement claims: it served as proof of the invalidity of Argentum's license to the '153 patent, which in turn served as proof that Defendants made false statements. This relevance outweighed any possible prejudice to the jury, as required by Federal Rule of Evidence 403.  Therefore, there was no error in the admission of this evidence.

### 4. Jury Instructions

Defendants argue that the Court erred in not instructing the jury on contract election, bad faith, and validity.  In terms of the contract election instructions, Defendants argue that instructions on an injured party's ability to elect to terminate or affirm a

contract procured by fraud would have helped the jury to understand the Georgia litigation evidence. But these instructions were inappropriate because, as stated above, the Georgia evidence only served to show that Defendants had notice of Flick's lack of authority to transfer the '153 patent rights–and an instruction on contract election was irrelevant to that issue. Thus, there was no error in failing to instruct on contract election. Turning to the issue of bad faith, there was no need to instruct the jury on this issue because, as stated above, the bad faith requirement did not apply to this case as Defendants had no rights to enforce the patent. Even if the bad faith requirement did apply here and the failure to instruct was error, the error did not affect Defendants' substantial rights because the record had ample evidence that Defendants acted in bad faith, so it is unlikely that the jury would have ruled differently with the inclusion of a bad faith instruction. Finally, Defendants' argument that the Court needed to instruct the jury that patents are presumptively valid fails. The validity of the '153 patent was not the relevant issue; validity is not an element of any of Noble's claims. Instead, the issue was whether Defendants had any basis for their right to enforce the patent. Beyond that, the record contained evidence that Defendants believed the patent was invalid against prior art, and the PTO later rejected the '153 patent. These facts suggest that the Defendants were not entitled to a presumption of validity. Thus, there was no error in failing to instruct on validity.

### 5. Arguments Regarding Claim Construction

Defendants next assert that the Court erred in allowing Noble to make arguments that its products did not infringe the '153 patent. Defendants correctly point out that the construction of patent claims falls within the realm of the judge, not the jury. *See*

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996).  But Defendants mischaracterize both my conduct and Noble's arguments.  First, Defendants claim that I denied their *in limine* motion to bar claims regarding noninfringement, but I granted this motion and at various points throughout the trial instructed Noble to not make a noninfringement argument.  Trial Tr. vol. 8, 39:7-20.  Further, the record demonstrates that Noble did not argue that their products did not infringe the '153 patent.  Rather, Noble's arguments were based on whether Defendants had a good faith belief that the '153 patent disclosed anything.  This argument only required the jury to assess Defendants' state of mind, not to construe the claim.  Because I did not allow Noble to argue noninfringement, Defendants have failed to show an error in this regard.

### 6. Conclusion

Defendants fail to demonstrate any errors by the Court that affected the Defendants' substantial rights.  Therefore, the Motion for a New Trial will be denied.

## D.  Remittitur

In the alternative to Defendants' motions for judgment as a matter of law and a new trial, Defendants seek remittitur (or, if Noble does not accept the remittitur, a new trial on damages).  Remittitur is appropriate only where a verdict is "so large as to shock the conscience of the court."  *Kazan v. Wolinksi*, 721 F.2d 911, 914 (3d Cir. 1983).  The decision of whether to remit damages is "within the sound discretion of the trial judge, 'who is in the best position to evaluate the evidence presented and determine whether or not the jury has come to a rationally based determination.'"  *Shesko v. City of Coatsville*, 324 F. Supp. 2d 643, 652 (E.D. Pa. 2004) (quoting *Spence v. Bd. of Educ.*, 806 F.2d 1198, 1201 (3d Cir. 1986)).

### 1. Compensatory Damages

Defendants' first argue that the Court should remit the amount of compensatory damages awarded against Argentum. "Compensatory damages 'are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (quoting *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001)).

Defendants' argument is without merit. The basis for their complaint is that the trade show statements did not cause sufficient damage to justify a $1 million jury award and the jury had no basis on which to grant an award larger than the compensation suggested by Noble's expert. Noble's expert, however, clearly testified that Defendants' statements were the causal factor in Noble's reduced sales. Trial Tr. vol. 6, 76:4. Although the expert only estimated that Noble's damages amounted to $812,000, the jury had a basis on which to grant a larger award. The jury could have credited the testimony of a Noble executive who projected $500,000 in sales for Noble in 2006, while Noble's expert only projected $358,000. Trial Tr. 63:23-64:5. The jury could also have used the figures given by Noble's expert and estimated damages for 2010. As explicitly stated by Noble's expert, any determination of Noble's lost sales necessarily relies on estimation and speculation. The $812,000 was not an exact figure of known damages, and thus the jury was not bound to adhere to it–it had the power to award less or more damages based on its assessment of the evidence. *See, e.g.*, *Larami Corp. v. Amron*, No. , 1995 WL 128022, at *15 (E.D. Pa. Mar. 23, 1995) (upholding a jury verdict greater than an expert's estimated damages because jury could have reasonably inferred from the testimony that the expert's calculations were conservative). The $1 million award is not

so much greater than the estimate of $812,000 that it shocks the judicial conscience, and therefore remittitur is not appropriate.

### 2. Punitive Damages

Defendants additionally challenge the jury's award of punitive damages in the amounts of $1 million and $1.25 million against Miller and Silver, respectively. They have three objections to the award. First, they state again that the jury unconstitutionally punished Miller and Silver for the fraudulent acts that were the subject of the Georgia litigation. Second, they argue that punitive damages are unconstitutional because the jury did not assign any compensatory damages to Miller or Silver. Third, they argue that Pennsylvania law requires the consideration of a defendants' wealth, and no such evidence was presented in this case.

Defendants' first argument can be dealt with quickly, as it has already been addressed above. I do not agree with Defendants' characterization of the verdict as responding to the Georgia fraud. The Georgia evidence was only introduced in order to support Noble's theory that Defendants acted in bad faith in their dealings with Noble. There is nothing on the record that suggests that the jury did not award the punitive damages in response to Defendants' bad faith actions toward Noble.

Turning to Defendants' second argument, the Due Process Clause requires that a civil litigant "receive fair notice . . . of the severity of the penalty that a State may impose." *BMW of N. Amer., Inc. v. Gore*, 571 U.S. 559, 574 (1996). The Supreme Court has identified three "guideposts" that help a court determine whether a punitive damages award is so excessive as to implicate due process concerns: the degree of reprehensibility of the defendant's actions, the disparity between the harm suffered and

16

the punitive damages, and the difference between the damages imposed and any civil penalties authorized. *Id.* at 514-75.  Here, Defendants' issue relates to the second factor. They argue that because the jury did not assign any compensatory damages to Miller and Silver, this means that the two men did not cause any harm to Noble.  They therefore conclude that there is an unconstitutional disparity between this total lack of harm and the substantial punitive damages award.

Upon a full consideration, however, the jury's award is constitutionally sound.  It is important to first note that the Supreme Court's guideposts are just that: guideposts. There is no brightline rule that a damages award is absolutely unconstitutional in the absence of a compensatory damages award.  In fact, there is precedent for upholding a punitive damages award against corporate actors where all compensatory damages were awarded against the corporation itself.  *See Associated Business Telephone Systems Corp. v. Greater Capital Corp.*, 729 F. Supp. 1488, 1508 (D.N.J 1990), *aff'd*, 919 F.2d 133 (3d Cir. 1990)*.*  Further, during deliberations, the jury expressed some confusion as to how to allocate the compensatory and punitive damages among the parties.  This confusion lends support to Noble's theory that the compensatory damages award against Argentum was intended to demonstrate that Argentum *and* its primary corporate actors, Miller and Silver, were responsible for the harm done.  The jury then may have awarded punitive damages based on a desire to individually punish Miller and Silver for their actions taken on behalf of Argentum.  Viewing the verdicts in this light, there is no great disparity: Miller and Silver did $1,000,000 worth of harm and face approximately the same amount of punitive damages.  Therefore, the punitive damages awards do not raise serious constitutional concerns.

Defendants' final argument is that punitive damages cannot stand where no evidence of the wealth of Miller or Silver was introduced. Defendants cite to *Judge Technical Servs., Inc. v. Clancy*, 813 A.2d 879 (Pa. Super. 2002), which states that "[t]he standard under which punitive damages are measured in Pennsylvania requires analysis of . . . the wealth of the defendant," *id.* at 889 (quoting *Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 101 (1989)). The Pennsylvania Superior Court has since clarified, however, that "evidence of a tortfeasor's wealth is not a necessary condition precedent for imposition of an award of punitive damages." *Vance v. 46 & 2, Inc.*, 920 A.2d 202, 207 (2007). Thus, the award of damages here cannot be challenged on this ground.

### 3. Conclusion

Defendants have failed to establish that either the compensatory damage or punitive damage awards were unsupported by evidence, unconstitutional, or shocking to the conscience. Therefore, remittitur is not appropriate.

### III. Conclusion

For the reasons explained above, Defendants' Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial will be denied. An appropriate order follows.

 September 23, 2011                                              /s/ A. Richard Caputo
Date                                                                          A. Richard Caputo
                                                                                   United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NOBLE BIOMATERIALS, | CIVIL ACTION NO. 3:08-CV-1305 |
| Plaintiff, | |
| | (JUDGE CAPUTO) |
| v. | |
| ARGENTUM MEDICAL, LLC, THOMAS MILLER and GREGG SILVER, | |
| Defendants. | |

**ORDER**

    **NOW**, this  23rd  day of September, 2011, **IT IS HEREBY ORDERED** that the Defendants' Motion for Judgment as a Matter of Law (Doc. 306) and Defendants' Motion for a New Trial (Doc. 308) are **DENIED.**

                                        /s/ A. Richard Caputo
                                        A. Richard Caputo
                                        United States District Judge